**John DAVIS**

**v.**

**UNITED STATES DEPARTMENT OF JUSTICE, Appellant.**

**No. 91–5209.**

United States Court of Appeals,
District of Columbia Circuit.

Argued April 6, 1992.

Decided July 7, 1992.

Douglas Letter, Atty., Dept. of Justice, with whom Stuart M. Gerson, Asst. Atty. Gen., and Jay B. Stephens, U.S. Atty., Washington, D.C., were on the brief, for appellant. John D. Bates, R. Craig Lawrence, and Susan A. Nellor, Asst. U.S. Attys., Washington, D.C., also entered appearances for appellant.

James H. Lesar, Washington, D.C., for appellee.

Before: SILBERMAN, BUCKLEY, and WILLIAMS, Circuit Judges.

Opinion for the Court filed by Circuit Judge SILBERMAN.

SILBERMAN, Circuit Judge:

The government appeals from a district court order under the Freedom of Information Act (FOIA) directing the Department of Justice to release tape recordings made in 1979 and 1980 during a criminal investigation of reputed mafia boss Carlos Marcello. Portions of some of the tapes were introduced into evidence during the trial of Marcello and others in 1981, but neither the requester, John Davis, nor the government can now determine exactly which parts were played in court. Under these circumstances, the district court held that the Department had the burden under FOIA of establishing the boundaries of public disclosure and, having failed to do so, was obliged to turn over all of the tapes. We reverse and remand.

## I.

Davis, author of the book *Carlos Marcello, Mafia Kingfish: Carlos Marcello and the Assassination of John F. Kennedy* (1989), sought recordings developed by the FBI, with the aid of an informant and two

undercover agents, as part of a major criminal investigation known as "BRILAB." The investigation, which focused on bribery and racketeering activities among organized crime figures, politicians, and labor union leaders, led to the indictment of five persons; two of the five, Marcello and a Louisiana official, were convicted for conspiring to obtain state insurance contracts.[1] Portions of over 130 of the BRILAB recordings were played at the New Orleans trial, *see United States v. Marcello*, 537 F.Supp. 1364, 1368 (E.D.La.1982), *aff'd sub nom. United States v. Roemer*, 703 F.2d 805 (5th Cir.), *cert. denied*, 464 U.S. 935, 104 S.Ct. 341, 78 L.Ed.2d 309 (1983), which received extensive local media coverage.

In 1986 Davis submitted a FOIA request for BRILAB materials. Although there may have been some initial confusion, Davis sought disclosure of all tapes and transcripts of tapes made during the investigation. The Department of Justice's Freedom of Information/Privacy Act Unit determined that only those recordings that had actually been played at trial could be disclosed. Forty-three reels of BRILAB recordings were located, but, as it happened, neither the Bureau nor the prosecutors, after so much time had passed, were able to establish exactly which tapes, or which parts, had been heard in the courtroom. The prosecutors had compiled a "play list" of 163 excerpts for possible introduction into evidence and had created four composite tapes for use at trial. According to the principal prosecutor and the agent who operated the audio equipment, however, the play list was not followed, not all of the composite tapes were used, and apparently no one, including the court reporter, kept any official record of the conversations played for the jury.

Davis brought this action in the district court. The government moved for summary judgment, arguing that each of the tapes was properly withheld under one or more of three statutory exemptions: 3 (information non-disclosable under another

---

[1] The convictions were later overturned in collateral proceedings. *See United States v. Mar-* *cello*, 876 F.2d 1147 (5th Cir.1989).

statute); 7(C) (law enforcement records the release of which could invade privacy interests); and 7(D) (law enforcement information provided by a confidential source). Davis filed a cross motion. He asserted that the exemptions did not apply because the tapes had already been made public at the trial. This was evident, he suggested, both from the play list and from various public documents, including "innumerable" newspaper accounts. He produced, *inter alia*, over 100 articles written at the time of the trial, some of which quote at length, apparently verbatim, from tapes that were heard in court.

The district court concluded that material "unconditionally revealed in open court ... enter[s] the public domain beyond recall for all time" and therefore cannot be withheld under the FOIA exemptions. *Davis v. United States Dep't of Justice*, Civil Action No. 88–0130, Mem. Op. at 3 (D.D.C. May 6, 1991). Since concededly some tapes had been played at trial, and the government could not, after "what appears to have been diligent inquiry," *id.* at 4, show which tapes or portions had *not* been disclosed, the government had failed to meet its burden under FOIA. *See* 5 U.S.C. § 552(a)(4)(B) ("[T]he burden is on the agency to sustain its action"). The court accordingly determined that the government, not Davis, must "suffer the consequences of the impasse," and presumed that all 43 tapes had been introduced. *See Davis*, Mem. Op. at 4–5. Davis' summary judgment motion was granted, the court ordered release of the tapes, and the government appealed.

## II.

## A.

This case appears to turn on the proper allocation of the burden of proof or the burden of production. The district court thought the government did not carry its general burden of proof under FOIA to establish facts that would justify withholding under an exemption. As we discuss in the latter part of this opinion, however, the government has shown that the information sought is covered by exemptions. But for the publication of the tapes—or some of them—there is little question that the government would be entitled to reject Davis' request.

■ We have held, however, that the government cannot rely on an otherwise valid exemption claim to justify withholding information that has been "officially acknowledged" or is in the "public domain." *Afshar v. Department of State*, 702 F.2d 1125, 1130–34 (D.C.Cir.1983); *accord Fitzgibbon v. CIA*, 911 F.2d 755, 765–66 (D.C.Cir.1990). Still, it is established that "a plaintiff asserting a claim of prior disclosure must bear the initial burden of pointing to specific information in the public domain that appears to duplicate that being withheld." *Afshar*, 702 F.2d at 1130. The ultimate burden of persuasion, to be sure, remains with the government, but a party who asserts that material is publicly available carries the burden of *production* on that issue. *See Occidental Petroleum Corp. v. SEC*, 873 F.2d 325, 342 (D.C.Cir. 1989). This is so because the task of proving the negative—that information has *not* been revealed—might require the government to undertake an exhaustive, potentially limitless search. *See id.; see also McGehee v. Casey*, 718 F.2d 1137, 1141 n. 9 (D.C.Cir.1983).

The question then becomes, and the real issue in the case is: how does the plaintiff go about establishing that the information he seeks has entered and remains in the public domain? How does the plaintiff, in other words, satisfy his burden of production? The Justice Department argues that evidence admitted at trial does not necessarily become permanently "public." *United States Department of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989), upon which the Department relies, does cast doubt on the proposition that, simply because material has been made public at one time, it should be thought permanently in the public domain, even though it has since become "practical[ly] obscur[e]." *Id.* at 762–71, 109 S.Ct. at 1476–80. The Court strongly suggested that a public domain rule such as

ours is of little significance, because if a requester can establish that the information he seeks is " 'freely available,' there would be no reason to invoke the FOIA to obtain access to the information." *Id.* at 764, 109 S.Ct. at 1477.

The government does not challenge our public domain doctrine based on *Reporters Committee;* it rather uses the case to support its position that it will release *only* those portions of the tapes that Davis can show, through newspaper accounts or other permanent records, were played in the courtroom. The government, in other words, is willing to give Davis only exactly what he can find in hard copy, which has merely the added value of voice inflection. *Cf. New York Times Co. v. NASA,* 920 F.2d 1002, 1004–06 (D.C.Cir.1990) (en banc). We think this position, grudging though it may be, is supported both by *Reporters Committee* and by our public domain cases, which, as we have said, require the requester to point to "specific" information identical to that being withheld.

■ Davis counters that, with his voluminous submissions of newspaper stories, he satisfied his burden of production and that to require more of him would be inequitable and inconsistent with the spirit of the Act. The government, he claims, is better situated than he to determine what was actually played in court and therefore should carry the burden. But the government is in no better position than Davis to establish exactly which tapes are transcribed in public documents.[2] Indeed, as we have noted, if the government had the burden, it would have to prove the negative. As to the equities, Davis overlooks the injury that disclosure might cause innocent third parties; they should not suffer because neither the government nor he can establish whether references to them on the tapes are available elsewhere. We conclude, then, that to obtain portions of tapes

alleged to be in the public domain, Davis has the burden of showing that there is a permanent public record of the exact portions he wishes. It does not suffice to show—as he has done—that *some* of the tapes were played to shift the burden to the government. Davis has not satisfied his burden to point to specific information in the public domain.

### B.

■ While a showing of public availability renders the FOIA exemptions inapplicable, the converse does not follow. If a requester is unable to establish that the material he seeks is in the public domain, the government, to continue withholding the information, still must prove that it falls within a statutory exemption. Although we have assumed *arguendo* in the foregoing discussion that the tapes would not have to be disclosed but for publication, the district judge never decided the question whether they were actually exempt. Since the parties raised and briefed the issue both in the summary judgment motions before the district court and on appeal, it is appropriate for us to decide the matter. *See Doe v. FBI,* 936 F.2d 1346, 1353 (D.C.Cir.1991); *Ryan v. Department of Justice,* 617 F.2d 781, 789 (D.C.Cir.1980).

■ The Justice Department argues that 130 of the 163 items on the tapes are covered by Exemption 3, which protects information "specifically exempted from disclosure" by another statute. 5 U.S.C. § 552(b)(3). The 130 conversations were obtained pursuant to Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–2521, which we recently held "falls squarely within the scope" of Exemption 3 because its language clearly evinces Congress' intent that intercepted material, except in a few well-defined circumstances, remain secret.

---

**2.** Davis suggests that the government's failure indicates that either its search efforts (for additional BRILAB materials) or its recordkeeping have been deficient. He abandoned the first argument in the district court and does not seriously press it here. As to the second, we are directed to no statute or regulation compelling

the government to maintain records of the evidence it presents at trials. *Cf. Yeager v. Drug Enforcement Admin.,* 678 F.2d 315, 321 (D.C.Cir. 1982) ("A requester is entitled only to records that an agency has in fact chosen to create and retain.").

*Lam Lek Chong v. United States Drug Enforcement Admin.*, 929 F.2d 729, 733–34 (D.C.Cir.1991). Davis does not dispute that the conversations in question are Title III intercepts. Absent a showing of public availability, then, they need not be disclosed. *See Association of Retired R.R. Workers, Inc. v. United States R.R. Retirement Bd.*, 830 F.2d 331, 336 (D.C.Cir. 1987) (material within the ambit of a non-disclosure statute is categorically exempt).

■ Of the remaining 33 conversations (recorded with the consent of one of the participants), most, according to the Department, involve the government's informant as a participant and so are covered by Exemption 7(D), which protects information "compiled for law enforcement purposes ... in the course of a criminal investigation" and "furnished by a confidential source." 5 U.S.C. § 552(b)(7)(D). The rest, it is maintained, are covered by Exemption 7(C), which applies to law enforcement records the release of which "could reasonably be expected to constitute an unwarranted invasion of personal privacy." *Id.* § 552(b)(7)(C). Exemption 7(C) is also asserted as an alternative justification for withholding the tapes the government claims are protected under Exemptions 3 and 7(D).

■ Both parties agree that the tapes were compiled for law enforcement purposes during a criminal investigation. And although he asserts that the informant's identity is "well-known," Davis does not dispute that the informant was a "confidential source." Once these requirements are met, the application of Exemption 7(D) is automatic. *See Schmerler v. FBI*, 900 F.2d 333, 336 (D.C.Cir.1990). Even when the source testifies in open court, as did the informant in this case, he does not thereby "waive the [government's] right to invoke Exemption 7(D) to withhold ... information furnished by a confidential source not actually revealed in public." *Parker v. Department of Justice*, 934 F.2d 375, 379–80 (D.C.Cir.1991). The government is obliged to disclose only the "exact information" to which the source actually testified. *Dow Jones & Co. v. Department of Justice*, 917 F.2d 571, 577 (D.C.Cir.1990). What that means for this case, essentially, is that the government is entitled to withhold the tapes obtained through the informant's assistance unless it is specifically shown that those tapes, or portions of them, were played during the informant's testimony.

■ Under Exemption 7(C), on the other hand, we balance the privacy interests that would be compromised by disclosure against the public interest in release of the requested information. *See Reporters Committee*, 489 U.S. at 762, 109 S.Ct. at 1476; *Safecard Servs., Inc. v. SEC*, 926 F.2d 1197, 1205 (D.C.Cir.1991). Release of the BRILAB tapes would assertedly implicate the privacy interests of several categories of individuals: those whose voices were overheard—the two convicted defendants, their three acquitted codefendants, other targets of the investigation who were not indicted, secretaries and telephone operators, the informant and undercover agents—and others who were mentioned by the conversants. We have previously recognized that each of these classes of persons has cognizable interests in privacy. "[P]ersons involved in FBI investigations— even if they are not the subject of the investigation—' "have a substantial interest in seeing that their participation remains secret." ' " *Fitzgibbon*, 911 F.2d at 767 (quoting *King v. Department of Justice*, 830 F.2d 210, 233 (D.C.Cir.1987) (quoting *Senate of the Commonwealth of Puerto Rico v. Department of Justice*, 823 F.2d 574, 588 (D.C.Cir.1987))). Even third parties mentioned in FBI investigative records "may have a similarly strong interest in non-disclosure." *King*, 830 F.2d at 233; *see also Safecard Servs.*, 926 F.2d at 1205. We can easily imagine the embarrassment and reputational harm that would be caused from disclosure of conversations that (according to the FBI) describe "a former federal cabinet member's drinking and dating while on a business trip" and that refer to "numerous politicians ... as being subject to influence by Marcello."

■ Some of the asserted privacy concerns admittedly appear relatively insignificant. It seems unlikely, for example, that

release of the tapes would cause discomfort to telephone operators whose voices were incidentally recorded.[3] But even if a particular privacy interest is minor, nondisclosure remains justified where, as here, the public interest in disclosure is virtually nonexistent. *See Fitzgibbon*, 911 F.2d at 768 (" 'We need not linger over the balance; something ... outweighs nothing every time.' " (quoting *NARFE v. Horner*, 879 F.2d 873, 879 (D.C.Cir.1989))).

 It is well established that the only public interest relevant for purposes of Exemption 7(C) is one that focuses on "the citizens' right to be informed about 'what their government is up to.' " *Reporters Committee*, 489 U.S. at 773, 109 S.Ct. at 1481 (quoting *EPA v. Mink*, 410 U.S. 73, 105, 93 S.Ct. 827, 845, 35 L.Ed.2d 119 (1973) (Douglas, J., dissenting)); *Painting & Drywall Work Preservation Fund, Inc. v. HUD*, 936 F.2d 1300, 1303 (D.C.Cir.1991). Although Marcello's alleged involvement in organized crime and racketeering activities, as well as his possible role in the Kennedy assassination, are undoubtedly of considerable interest, they "reveal[ ] little or nothing about an agency's own conduct." *Reporters Committee*, 489 U.S. at 773, 109 S.Ct. at 1481. Davis points out that "the Marcello prosecution involved the bribery of public officials." But it did not involve federal government officials, let alone officials " 'of the agency that has possession of the requested records.' " *Burge v. Eastburn*, 934 F.2d 577, 580 (5th Cir.1991) (quoting *Reporters Committee*, 489 U.S. at 773, 109 S.Ct. at 1481); *accord Landano v. United States Dep't of Justice*, 956 F.2d 422, 430 (3d Cir.1992). His most tenable argument relates to "issues of entrapment, government overreaching and artificially created jurisdiction" during the BRILAB

investigation. We have held, however, that when such governmental misconduct is alleged as the justification for disclosure, the public interest is "insubstantial" unless the requester puts forward "compelling evidence that the agency denying the FOIA request is engaged in illegal activity" and shows that the information sought "is necessary in order to confirm or refute that evidence." *Safecard Servs.*, 926 F.2d at 1205–06. Davis has not even approached such a showing. The same allegations were extensively discussed and rejected by the district judge presiding over Marcello's trial, *see Marcello*, 537 F.Supp. at 1369–77, and no basis is offered for questioning that result.

\*　\*　\*　\*　\*　\*

The Justice Department is prepared to release excerpts quoted in newspaper articles or other publicly available materials, provided that Davis first analyzes the materials and demonstrates "that a specifically described portion of an identified conversation on a particular date between named individuals was played publicly at the Marcello trial." We agree that Davis has this burden, but he should have an opportunity to reformulate his request to satisfy it. We accordingly reverse the district court on the burden of proof (production) question and remand for further proceedings consistent with this opinion.[4]

*It is so ordered.*

3. Davis asserts that some of the third parties mentioned on the tapes also have little if any continuing claim to privacy because they have died. *Cf. Keys v. United States Dep't of Justice*, 830 F.2d 337, 347 (D.C.Cir.1987) (noting that DOJ did not claim exemption for deceased persons mentioned in FBI investigative records). As the government points out, however, that would not reduce the privacy interests of the speakers who referred to the deceased individuals.

4. In light of this disposition, we do not decide whether, as Davis contends, the government's *Vaughn* index, *see Vaughn v. Rosen*, 484 F.2d 820, 823–24 (D.C.Cir.1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974), is inadequate. The Department's public submissions explained the basis for each of the three asserted exemptions and, for exemption 7(C), identified the privacy interests at stake with sufficient detail. *See Keys*, 830 F.2d at 346–48. Neither the public nor the *in camera* filings, however, specifically correlate the exemptions

and privacy interests with each of the 163 items. Since, as we have determined, all of the government's claims have merit, such a precise matching may well be unnecessary. *See id.* at 349 ("[I]t is the function, not the form, of the index that is important."). On the other hand, if on remand the government discloses portions of the tapes that are shown to be publicly avail-able, the privacy interests of specific individuals in related portions may need to be reevaluated. If, for example, the only basis for nondisclosure is an individual's interest in remaining anony-mous, and an excerpt revealing his identity is disclosed, there may no longer be any justifica-tion for continuing to withhold other parts of the same tape.