Robert LEPELLETIER, Jr., Plaintiff,

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, et al.,**
Defendants.

Civil Action No. 96–1363(JR).

United States District Court,
District of Columbia.

Sept. 8, 1997.

458

Robert Lepelletier, Jr., Falls Church, VA, pro se.

Dina Biblin, Melissa Satterwhite, F.D.I.C., Washington, DC, for Defendants.

## MEMORANDUM OPINION

ROBERTSON, District Judge.

Plaintiff describes himself as an independent money finder. On October 4, 1995, he made a Freedom of Information Act (FOIA) request to defendant FDIC for lists of all the unclaimed deposits of three failed banks— National Bank of Washington ("NBW") and Madison National Banks of Washington D.C. and Virginia—that the FDIC holds in receivership. The FDIC provided the requested information for the unclaimed deposits of state and local municipalities, non-profit entities and deceased depositors. With respect to deposits of living individuals and businesses, FDIC disclosed deposit balances but withheld depositor names, invoking FOIA Exemptions 4 and 6, 5 U.S.C. §§ 552(b)(4) and (b)(6). Plaintiff brought this action on

June 14, 1996. He alleges that FDIC's assertion of Exemptions 4 and 6 was improper and that FDIC violated the due process clause of the Constitution by failing to give sufficient notice *to the depositors* of their right to the unclaimed funds.[1]

On December 22, 1996, FDIC announced its plans to terminate its receivership of Madison National Bank of Virginia. Because termination would extinguish the rights of depositors to unclaimed funds at that bank, plaintiff moved for an emergency temporary restraining order and a permanent injunction. At a hearing on February 4, 1997, defendant agreed to take no action to terminate the receiverships of any of the three institutions until resolution of this suit. Both parties subsequently moved for summary judgment on the FOIA claim, and defendant moved for summary judgment on the due process claim. I heard argument on June 27, 1997.

## BACKGROUND

The information plaintiff seeks was acquired by FDIC in its capacity as receiver for insolvent banks pursuant to 12 U.S.C. § 1821(c)(2)(A)(ii). FDIC assumes control of the records of insolvent banks by operation of law when it becomes receiver. 12 U.S.C. § 1821(d)(2)(A). FDIC must make good on the insured deposits of an insolvent bank, either by paying cash or by establishing deposits in other local banks. 12 U.S.C. § 1821(f).[2]

In 1993, Congress changed the procedures for notification to depositors in the event of FDIC receiverships. Pub.L. No. 103–44, 107 Stat. 220 (codified at 12 U.S.C. § 1822(e)). The new procedures were to apply prospectively to all receiverships created after June 28, 1993. For receiverships created between January 1, 1989 and June 28, 1993—including the receiverships of the NBW and the Madison banks which are the subject of this action—Congress established a special rule. The special rule extended the time for a depositor to make a claim against FDIC from 18 months to the date the receivership is terminated. Pub.L. No. 103–44, § 2(b). The statute also required that FDIC provide to any state, upon request, the name and last known address of any insured depositor eligible to make a claim against FDIC. Pub.L. No. 103–44, § 2(c).

In the present case, the FDIC has taken initial steps to terminate the receivership of Madison National Bank of Virginia and has expressed a desire to terminate the receivership of the NBW and Madison National Bank of Washington, D.C.

## ANALYSIS

### A. *FOIA Claims*

FDIC has declined to disclose the identities of businesses having unclaimed deposits, invoking FOIA Exemption 4, and declined to disclose the identities of individual depositors, invoking FOIA Exemption 6. For the reasons set forth below, FDIC will be required to disclose the identities of business depositors but may continue to withhold the identities of individuals.

### 1. *Exemption 4*

Exemption 4 protects from disclosure "trade secrets and commercial or financial information obtained from a person [that are] privileged or confidential." 5 U.S.C. § 552(b)(4). The information sought in this case is "financial information" for purposes of the exemption. *See Washington Post Co. v. U.S. Dep't of Health and Human Servs.*, 690 F.2d 252, 266 (D.C.Cir.1982) (a list of organizations in which an individual had financial interests, even without dollar amounts, was "financial" information). The banks from which FDIC obtained the information are "persons" within the meaning of Exemption 4. *See, e.g., Comstock Int'l Inc. v. Export–Import Bank of the United States*, 464 F.Supp. 804, 806 (D.D.C.1979). The question is whether the information is "confidential."

---

**1.** I dismissed plaintiff's third cause of action—a breach of contract claim—on January 23, 1997.

**2.** In this case, the transfer of deposits occurred when Riggs Bank acquired NBW and Signet Bank acquired the Madison National Banks of Washington D.C. and Virginia.

██ Different standards are used for determining whether information is confidential for Exemption 4 purposes depending on whether the information was required by the government or was volunteered to the government. *Critical Mass Energy Project v. Nuclear Regulatory Comm'n,* 975 F.2d 871, 878 (D.C.Cir.1992), *cert. denied,* 507 U.S. 984, 113 S.Ct. 1579, 123 L.Ed.2d 147 (1993).[3] Required information is "confidential" if its disclosure is likely to cause substantial harm to the competitive position of the person from whom it was obtained. *National Parks & Conservation Ass'n v. Morton,* 498 F.2d 765, 770 (D.C.Cir.1974). This standard requires a showing of "actual competition and a likelihood of substantial competitive injury." *CNA Fin. Corp. v. Donovan,* 830 F.2d 1132, 1152 (D.C.Cir.1987). Voluntarily provided information is protected if it "would customarily not be released to the public by the person from whom it was obtained." *Critical Mass,* 975 F.2d at 879.

██ In this case it was the insolvent banks, and not the individual depositors, that were compelled to provide financial information to the government. The obvious question—whether Exemption 4 applies at all to one party's information when it has been provided by another—is not answered by the briefs of the parties. It is, however, an academic question in this case, because depositors who have abandoned deposits, at least in District of Columbia and Virginia, have no continuing expectation of confidentiality. The District of Columbia and Virginia both presume that bank deposits have been abandoned after 5 years of inactivity, and both provide for publication of the names of depositors. D.C.Code § 42–206 & § 42–218; VA Code § 55–210.3:01 & § 55–210.13. Plaintiff properly points out that all persons having property in a state have constructive notice of the state statutes that govern the disposition of abandoned property. *See Anderson Nat'l Bank v. Luckett,* 321 U.S. 233, 243–44, 64 S.Ct. 599, 604–05, 88 L.Ed. 692 (1944). Thus, without even reaching the question of whether disclosure of depositor

information would likely cause substantial harm to anyone's competitive position, it is clear that Exemption 4 is not applicable, because depositors who abandon their funds likewise relinquish their claims to confidentiality.

### 2. *Exemption 6*

██ FOIA also exempts from disclosure any information contained in "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 6 applies only to individuals, not businesses. *Sims v. CIA,* 642 F.2d 562, 572 n. 47 (D.C.Cir.1980). The phrase "similar files" includes all information that applies to a particular individual. *Department of State v. Washington Post Co.,* 456 U.S. 595, 602, 102 S.Ct. 1957, 1961–62, 72 L.Ed.2d 358 (1982). The dispute in this case is whether the disclosure of the names of individual depositors would constitute a "clearly unwarranted invasion of personal privacy." In order to make that determination, I am required to balance the public interest in disclosure against the individual privacy interests that would be violated by disclosure. *Department of State v. Ray,* 502 U.S. 164, 175, 112 S.Ct. 541, 547–48, 116 L.Ed.2d 526 (1991).

Defendant, relying upon *National Ass'n of Retired Federal Employees v. Horner* ("NARFE"), 879 F.2d 873 (D.C.Cir.1989), argues that substantial privacy interests are at stake in this case. In *NARFE,* a nonprofit association of retired federal employees sued under FOIA to compel the Office of Personnel Management to disclose a list of names and addresses of new annuitants. The Court of Appeals' decision noted that "disclosure of names and addresses is not inherently and always a significant threat to the privacy of those listed; whether it is a significant or a *de minimis* threat depends upon the characteristic(s) revealed by virtue of being on the particular list, and the consequences likely to ensue." *Id.* at 877. Applying that analytical

---

**3.** Information is considered "required" if any legal authority compels its submission, including informal mandates that call for the submission of the information as a condition of doing business with the government. All other information is considered "voluntary" for purposes of Exemption 4.

framework, the court concluded that invasion of the annuitants' privacy would be "significant" and that there was "a substantial probability that the disclosure will lead to the threatened invasion [of privacy]: one need only assume that business people will not overlook an opportunity to get cheaply from the Government what otherwise comes dearly, a list of qualified prospects for all the special goods, services, and causes likely to appeal to financially secure retirees." *Id.* at 878.

■■■■■ In this case, unlike *NARFE,* the information sought by plaintiff does not identify a group of individuals falling within a specific demographic category (such as elderly annuitants) that would lend itself to targeted marketing strategies and result in an "unwanted barrage of mailings and personal solicitations." *Id.* at 876. The instant case is arguably more like *Ditlow v. Shultz,* 517 F.2d 166 (D.C.Cir.1975), where disclosure of a list of airline passengers who returned from Asia and Australia during a period of a few months was held not to result in a substantial invasion of privacy because "the only consequence of the exposure ... is a mailed notice informing the person [on the disclosed list] that he is a member of a class and may be awarded damages for airline overcharges." *Id.* at 170 n. 15.

The invasion of privacy in this case is more limited than in *NARFE,* but it is not negligible. Solicitations by "money finders" may be unwelcome. A slight privacy interest is at stake in this case.

That privacy interest must be balanced against the public interest that may be promoted by disclosure. It is well established that "the only relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'" *Department of Defense v. FLRA,* 510

U.S. 487, 497, 114 S.Ct. 1006, 1013, 127 L.Ed.2d 325 (1994) (quoting *Department of Justice v. Reporters Comm. for Freedom of Press,* 489 U.S. 749, 773, 109 S.Ct. 1468, 1481, 103 L.Ed.2d 774 (1989)). That purpose is not promoted, however, by "disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct." *Id.* at 496, 114 S.Ct. at 1013 (internal quotations omitted).

Plaintiff, who never directly identified a FOIA-related public interest component in his briefs or during oral argument, did suggest as part of his constitutional claim that plaintiff "is challenging FDIC's abuse as to its deposit insurance fund." Pl. Opp. to Mot. for Summ. Judg. at 7. That oblique allegation is more rhetoric than substance, however. Plaintiff's constitutional claim focuses only on whether the notice required by the statute is sufficient under the due process clause, not whether the FDIC has complied with its statutory obligations by failing to provide the notice required by the statute.[4] Because plaintiff has not explained how disclosure of the requested names will "shed light on [FDIC's] performance of its statutory duties or otherwise let citizens know what their government is up to," he has failed to identify any cognizable public interest in the disclosure he seeks. "We need not linger over the balance; something, even a modest privacy interest, outweighs nothing [the public interest] every time." *NARFE,* 879 F.2d at 879.

■■■■ Plaintiff goes on to argue that, even if Exemption 6 applies in this case, "[s]ome of the unclaimed depositor information" was published in the *Washington Times* newspaper (by the D.C. government, which requested and received the names of the depositors from the FDIC pursuant to Section 2(c) of Pub.L. No. 103–44) and is no longer protected because it is now publicly available. Pl. Statement of Material Facts, Statement # 2.[5]

---

**4.** Indeed, plaintiff concedes that the actions FDIC intends to take are in accordance with the statute. Complaint at ¶ 24.

**5.** I address plaintiff's argument in the context of Exemption 6 even though plaintiff primarily discussed it in the context of Exemption 4. Com-

plaint ¶ 15; Plaintiff's Supplemental Points and Authorities in Support of Cross–Motion for Summary Judgment, May 4, 1997.

A plaintiff asserting prior disclosure has the initial burden of pointing to specific information in the public domain that appears to duplicate that which is being withheld. *See Public Citizen v. Dep't of State,* 11 F.3d 198, 201 (D.C.Cir.1993); *Davis v. Dep't of Justice,* 968 F.2d 1276, 1279–80 (D.C.Cir.1992); *Occidental Petroleum Corp. v. SEC,* 873 F.2d 325, 342 (D.C.Cir.1989); *Afshar v. Dep't of State,* 702 F.2d 1125, 1130 (D.C.Cir.1983). Plaintiff cannot shift the burden of production to the government through naked allegations. He has "the burden of showing that there is a permanent public record of the exact portions he wishes [would be disclosed]." *Davis,* 968 at 1280. *See also Afshar,* 702 F.2d at 1132 (prior disclosure does not constitute waiver if it is in "some material respect different from that" which is being withheld). Here, plaintiff has failed to provide any evidence of the prior publication and has not sustained his burden.

## B. *Due Process Claim*

Plaintiff alleges that FDIC will violate the due process clause if it allows unclaimed deposits at the three banks to revert to the FDIC without first effecting general publication of the depositors' names. Complaint ¶¶ 24 & 25. Since plaintiff concedes that FDIC is acting in accordance with its statutory obligations, I treat plaintiff's claim as one that challenges the notice provisions of the statute as facially unconstitutional.

### 1. *Standing*

In order to establish standing to raise the due process claim, plaintiff is required by Article III of the Constitution to show that 1) he has suffered or is threatened with some actual harm or direct injury 2) as a result of the defendant's actions 3) that can likely be redressed by the court. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 2136–37, 119 L.Ed.2d 351 (1992). Plaintiff, an independent money finder,[6] maintains that he is faced with imminent injury if FDIC allows the unclaimed deposits to revert to FDIC without publishing the names of depositors. The alleged injury is the denial of the opportunity to develop a business relationship with depositors who have unclaimed deposits. The harm alleged by plaintiff is sufficiently concrete, given that plaintiff engages in money finding for his livelihood and plans to pursue business opportunities at banks that failed between 1989 and June 28, 1993. *See Secretary of State of Maryland v. Munson Co., Inc.,* 467 U.S. 947, 958, 104 S.Ct. 2839, 2848, 81 L.Ed.2d 786 (1984) (injury-in-fact when challenged statute affects activity "at the heart of the business relationship between [plaintiff] and its clients"); *Singleton v. Wulff,* 428 U.S. 106, 115, 96 S.Ct. 2868, 2874–75, 49 L.Ed.2d 826 (1976) (plurality) (injury-in-fact because doctors receive payments for non-therapeutic abortions from Medicaid benefits). *See also Women's Equity Action League v. Cavazos,* 879 F.2d 880, 886 (D.C.Cir.1989) (need only enhanced probability of gains if successful, not certainty of gains); *Central Arizona Water Conservation Dist. v. U.S. Environmental Protection Agency,* 990 F.2d 1531, 1538 (9th Cir.1993) (certainty about specific amount of loss not required). Moreover, FDIC has already taken steps to terminate the receivership of at least one of the banks and expressed the desire at oral argument to terminate the other two banks at the completion of this litigation. *See Valley Forge Christian College v. Americans United for Separation of Church and State Inc., et al.,* 454 U.S. 464, 485, 102 S.Ct. 752, 765, 70 L.Ed.2d 700 (1982) (plaintiff must identify a personal injury suffered as a consequence of the alleged constitutional error). The statute, which will operate to revert unclaimed funds to FDIC at the termination of the receiverships, is the direct cause of plaintiff's injury. A ruling that the statute does not provide constitutionally adequate notice would likely result in effective redress for plaintiff. Plaintiff's allegations are sufficient to establish the "irreducible minimum" elements of Constitutional standing, injury, causation, and redressability.

---

6. Between August 20, 1994 and February 15, 1995, FDIC contracted with plaintiff to act as a money finder on its behalf. Complaint at Ex. A. A December 4, 1996 letter filed by plaintiff in open court from John R. Mullinix, Regional Ombudsman of FDIC, further supports the conclusion that plaintiff has, and continues to engage in finding unclaimed deposits for commercial gain.

Plaintiff must also overcome the prudential limitation on standing that litigants ordinarily may not be heard to raise the rights of others. *Barrows v. Jackson,* 346 U.S. 249, 255, 73 S.Ct. 1031, 1034–35, 97 L.Ed. 1586 (1953). In order to assert the rights of depositors plaintiff must show that: 1) he has a "close relationship to the third party" and 2) there "exist[s] some hindrance to the third party's ability to protect his or her own interests." *Powers v. Ohio,* 499 U.S. 400, 411, 111 S.Ct. 1364, 1370–71, 113 L.Ed.2d 411 (1991). *But cf. Amato v. Wilentz,* 952 F.2d 742 (3d Cir.1991) (concluding these factors are not required, just relevant).

The reason for the first, "close relationship" factor is to ensure that the plaintiff will act as an effective advocate for the third party. As Justice Kennedy noted in *Powers,* "in certain circumstances 'the relationship between the litigant and the third party may be such that the former is fully, or very nearly, as effective a proponent of the right as the latter.'" 499 U.S. at 413, 111 S.Ct. at 1372 (citing *Singleton v. Wulff,* 428 U.S. 106, 115, 96 S.Ct. 2868, 2874, 49 L.Ed.2d 826 (1976)). The courts have sometimes found that a "congruence of interests" exists when state action affects the business relationship between the plaintiff and a third party. *See Craig v. Boren,* 429 U.S. 190, 195, 97 S.Ct. 451, 456, 50 L.Ed.2d 397 (1976) ("vendors ... have been uniformly permitted to resist efforts at restricting their operations by acting as advocates of the rights of third parties who seek access to their market or function"); *Pierce v. Society of Sisters,* 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925) (private school operators have standing to raise constitutional claims of parents to direct the upbringing of their children; focuses on plaintiff's objective of protecting the business relationship). *See also National Cottonseed Products Ass'n v. Brock,* 825 F.2d 482, 489–92 & n. 15 (D.C.Cir.1987) (discussing standing based on vendor-vendee relationship). In the current case, there is no existing business relationship between plaintiff and the third party depositors, but none can develop (at least with respect to unclaimed individual deposits in these banks) unless FDIC reveals the depositors' names. Plaintiff's objective of achieving publication of the names is consistent with the depositors' interest in receiving notice of their unclaimed deposits before they revert to FDIC. Under these circumstances, I find that the relationship between plaintiff and the depositors is sufficiently close and the interests sufficiently aligned to allow plaintiff to raise the constitutional claims of the depositors.

In addition, of course, depositors themselves, who have not received actual notice of their unclaimed deposits and have no knowledge of the due process claim they could bring, initially have no ability to assert their rights.

Plaintiff has complied with both the constitutional and prudential standing requirements.

*2. Merits*

The seminal constitutional notice case, *Mullane v. Central Hanover Bank and Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), established that the due process clause requires "notice reasonably calculated, under all the circumstances, to apprise interested parties" of the pendency of any final action that affects their legal rights. In *Mullane,* the Supreme Court ruled that general publication in a newspaper was constitutionally permissible notice for those beneficiaries whose whereabouts could not be ascertained with due diligence, but that the trustees were required to send notice to the last address of beneficiaries known to them. 339 U.S. at 317–20, 70 S.Ct. at 658–60. In making this ruling, the Court established "reasonableness" as the touchstone of constitutional notice analysis, stating that the notice must be of such nature "as reasonably to convey the required information" and it must "afford a reasonable time for those interested to make their appearance." *Id.* at 314, 70 S.Ct. at 657. The Court concluded that "if with due regard for the practicalities and peculiarities of the case these conditions are reasonably met the constitutional requirements are satisfied." *Id.* at 314–15, 70 S.Ct. at 657.

Here, complying with the version of 12 U.S.C. § 1822(e) that was in effect when it assumed receivership of the three banks,

FDIC sent written notice addressed to the holders of unclaimed deposits at their last know addresses. FDIC did not send another notice after enactment of the 1993 amendments, telling depositors that the period for filing their claims had been extended. The statute required no such notice. *See Nordstrom v. United States,* 169 Ct.Cl. 632, 342 F.2d 55, 59 (1965) (federal government has no obligation to notify parties about changes in the law, unless directed to do so by statute). Nor did the amending statute require the government to publish unclaimed depositor lists before allowing the money to revert to FDIC. Instead, FDIC was directed to provide the names and last know addresses of depositors to States requesting them. Pub.L. No. 103–44, Sec. 2(c).

Plaintiff has the burden of persuasion in his Constitutional claim and has failed to carry it. Even assuming (in the absence of any proof of the proposition) that general publication would increase the number of depositors who would receive actual notice that their deposits were available for withdrawal, the Constitution requires only that the government take reasonable steps to notify depositors, not all possible steps or the very best ones. Plaintiff has failed to show that the notice required by statute and actually provided by FDIC is unreasonable under the circumstances. Defendant's motion for summary judgment on the due process claim will accordingly be granted.