**Jeffrey STEINBERG, Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF JUSTICE, Defendant.**

**No. Civ.A. 93–2409–LFO.**

United States District Court, District of Columbia.

July 2, 1998.

Mr. Jeffrey Steinberg, Leesburg, Virginia, pro se.

Benjamin R. Barnett, Assist. U.S. Attorney, Washington, DC, for defendant.

## MEMORANDUM

OBERDORFER, District Judge.

On April 28, 1998, a Memorandum and Order granted in part and denied in part cross-motions for summary judgment in this Freedom of Information Act (FOIA) case. As a result of that ruling, only twenty-one documents remain in contention. The documents fall into three categories: eleven documents, which were referred by the FBI to the CIA for declassification review, required a new *Vaughn* index; three documents, which contain redactions pursuant to FOIA Exemption 1, demanded more specific assurances from the government; and seven documents, which contain redactions pursuant to FOIA Exemption 7(C), were submitted for *in camera* inspection. For the reasons stated below, plaintiff Jeffrey Steinberg's latest mo-

tion for summary judgment will be granted in part and this case will be closed.

## I.

The April 28, 1998 Memorandum and Order sustained the adequacy of the Justice Department's *Vaughn* index for the CIA referral documents—the January 24, 1997 Declaration of Lee Strickland—in all respects but one. *See* Mem. of 4/28/98, at 4–5. The Memorandum noted, "[S]ection two of the Strickland Declaration fails to correlate every redaction *within* each document with the various justifications collectively offered for the redactions from each document." *Id.*, at 5; *see generally King v. United States Dep't of Justice*, 830 F.2d 210, 219 (D.C.Cir.1987) ("[W]hen an agency seeks to withhold information, it must provide 'a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply.'").

The Justice Department has now supplemented the original Strickland Declaration to the satisfaction of the Court and, as of the July 2, 1998 chambers conference, the plaintiff. On June 8, 1998, the Department filed a supplemental declaration from Lee Strickland, which codes the specific CIA exemption claims into seven categories. Each category references portions of the original declaration that describe the exemption claims in full. *See* Mem. of 4/28/98, at 5 ("[The] specific rationales [are] explained in great depth in section one of the declaration. Given its subject matter, the 23-page declaration is quite detailed."). On July 2, the Department filed hard copies of the eleven CIA documents that juxtapose each redaction recommended by the CIA with the relevant CIA's exemption codes. Both parties agree that these filings collectively discharge the government's responsibilities under FOIA with respect to the CIA documents.

## II.

Also with one exception, the April 28, 1998 Memorandum and Order affirmed the Justice Department's invocation of Exemption 1; among other things, Exemption 1 privileges

sensitive national security material in conjunction with certain executive orders. *See* Mem. of 4/28/98, at 9–11. The lone exception was for three documents containing information about foreign governments, which the government alleged was protected by an "express or implied" confidentiality agreement. *See* 2d Decl. of Sherry L. Davis, App. A, at 110, 111, 219. The Memorandum stated, "To ensure meaningful judicial review, the government cannot rely on boilerplate or indiscriminate statements that information is held in confidence." Mem. of 4/28/98, at 10. The Justice Department was directed to clarify whether the confidentiality agreements applicable to the three documents were explicit or might reasonably be inferred.

The Department responded by filing a supplemental declaration of Sherry Davis on June 8, 1998. In no uncertain terms, the Department now states, "The FBI's relationship with the country at issue is based on an expressed promise that both our relationship and information furnished will be classified 'Secret'." Davis Decl., ¶ 10. Moreover, in a subsequent and periodic review by the FBI, the foreign government "steadfastly maintained" its interest in that confidential relationship. *Id.*, ¶ 11. Steinberg concedes that "[c]onfidentiality as such, is now sufficiently shown...." Pl.'s Mem. in Resp. Def.'s 6/8/98 Notice of Filing, at 6. The Court agrees, and is now satisfied with the Exemption 1 redactions from these documents. *See* Mem. of 4/28/98, at 10 ("Unlike an implied promise, an explicit assurance leaves no room for reasonable interpretation as to its existence. Special Agent Sherry Davis has examined and approved the Department's redactions, personally attesting to such 'explicit understandings.'").

Steinberg's remaining concern with these redactions is without merit. On June 19, 1998, Steinberg raised new doubts about the roughly four lines redacted from two of the three documents, FBI HQ 199–12167–59 and FBI HQ 199–12167–60. While conceding that the identity of a foreign source may be privileged he questions whether the government has withheld too much, i.e. non-privileged material. Nonetheless, the small size of these redactions is insufficient to raise a

red flag. *Cf.* Mem. of 4/28/98, at 13. Steinberg's "metaphysical doubt" aside, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), the redactions here are eminently reasonable. After all, the government purports to protect not only the identity of its source, but also "the relationship and cooperative endeavors between this component and the FBI." 2d Davis Decl., App. A, at 110; *see also id.* at 111. Given that "[t]his particular government steadfastly maintained . . : that both its relationship with the FBI and information that it provided should continue to be held and maintained as 'Secret,'" Davis Decl., ¶ 11, it is reasonable to believe disclosure would jeopardize "foreign relations or foreign activities of the United States." Exec. Order No. 12356, § 1.3(a)(5), 47 Fed. Reg. 14,874 (1982).

### III.

The Justice Department submitted the remaining seven documents for *in camera* inspection on June 8, 1998. (For simplicity's sake, this Memorandum will refer to the documents—HQ 199–12167–16, HQ 199–12167–30, HQ 199–12167–35, HQ 199–12167–42, SA 199–1182–4, SA 199–1182–10, and WFO 199–4177–1A1—as documents 1 through 7, respectively.) Prior rulings have questioned the substantial redactions from these documents that the Department justifies under Exemption 7(C), which privileges records compiled for law enforcement purposes when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C); *see* Mem. of 7/14/97, at 8–10; Mem. of 4/28/98, at 12–14. Over the objections of the Justice Department, the Court now orders that the seven documents be disclosed to Steinberg with more limited redactions.

### A.

This Memorandum and Order address only those portions of the seven documents that were withheld pursuant to Exemption 7(C). The government's other privilege claims have already been adjudicated. Moreover, the Court has inquired several times whether the Justice Department wished to invoke exemptions other than 7(C) to prevent the release of sensitive information in these documents, including national security material. *See, e.g.,* Order of 6/11/98, at 1. The government has conspicuously declined to do so.

Along with the seven documents themselves, on June 8, 1998 the Justice Department submitted a five-page *in camera* declaration by FBI Special Agent Sherry L. Davis. Although it purports to "provid[e] an explanation for the deletions taken pursuant to Exemption (b)(7)(C)," In Camera Davis Decl., ¶ 3, the declaration offers only a brief and conclusory rationale for each redaction at issue. After some prompting from the Court, the Justice Department submitted a new proposal for redactions at an *in camera* chambers conference on June 9. While this proposal would disclose new material to Steinberg, the segments would remain largely incomprehensible due to redactions.

After reviewing the Justice Department's proposal, the Court rejected many of the redactions favored by the government. The Court submitted its preliminary findings at an *in camera* chambers conference on June 11, in order to provide the Justice Department an adequate opportunity to address specific disclosures. With regard to documents 1, 2, 3, and 6, the Department offered persuasive reasons why certain material, preliminarily favored for release by the Court, could reasonably be expected to constitute an unwarranted invasion of personal privacy if disclosed. The Department concurred (albeit reluctantly) with the Court's judgment that other material in those four documents was not privileged under Exemption 7(C). (On June 15, however, the Department reasserted its opposition to any disclosures beyond those proposed on June 9.) With regard to documents 4, 5, and 7, the Department protested substantial new releases favored by the Court. On June 18, it was given the opportunity to submit *in camera* additional legal authority to justify its position.

### B.

To apply Exemption 7(C), "a court must balance the public interest in disclosure against the interest Congress intended the

Exemption to protect"—namely, "the individual's control of information concerning his or her person." *United States Dept. of Justice v. Reporters Committee for Freedom of the Press,* 489 U.S. 749, 763, 776, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989). In *Reporters Committee,* the Supreme Court made clear that the public interest in disclosure is limited to fulfilling "FOIA's central purpose," which is "to ensure that the Government's activities be opened to the sharp eye of public scrutiny, not that information about private citizens that happens to be in the warehouse of the Government be so disclosed." *Id.* at 774, 109 S.Ct. 1468. If the public interest is negligible, even a minor privacy interest is sufficient to warrant redaction. *See Davis v. United States Dep't of Justice,* 968 F.2d 1276, 1282 (D.C.Cir.1992); *see also Fitzgibbon v. CIA,* 911 F.2d 755, 768 (D.C.Cir.1990) ("We need not linger over the balance; something ... outweighs nothing every time."). As a general rule, "categorical decisions may be appropriate and individual circumstances disregarded when a case fits into a genus in which the balance characteristically tips in one direction." *Reporters Committee,* at 776, 109 S.Ct. 1468.

Here, the public interest in disclosure is significant. The documents that Steinberg seeks relate to a criminal investigation of alleged counter-terrorist activities. Unlike the criminal 'rap sheets' that the plaintiff sought in *Reporters Committee* —which "reveal only the dry, chronological, personal history of individuals who have had brushes with the law," *id.* at 766 n. 18, 109 S.Ct. 1468—these documents "tell us [something] about matters of substantive law enforcement policy that are properly the subject of public concern." *Id.* They indicate, for instance, what measures the government was willing to initiate in order to combat a perceived threat to its national security objectives. These documents are a far cry from individual tax returns or applications for public relief, *see id.*—"information about private citizens that happens to be in the warehouse of the Government." *Id.* at 774, 109 S.Ct. 1468.

Accordingly, the application of Exemption 7(C) here turns on the particular privacy interests at stake. Exemption 7(C) is designed to protect a broad spectrum of information—ranging from highly intimate details, *see Washington Post Co. v. United States Dep't of Justice,* 863 F.2d 96, 100–01 (D.C.Cir.1988), to prosaic personal identifiers such as one's place of birth, *see Painting & Drywall Work Preservation Fund, Inc. v. Department of Housing & Urban Develop.,* 936 F.2d 1300, 1302 (D.C.Cir.1991), to even matters of public record that have faded into 'practical obscurity,' *see Reporters Committee,* at 767, 109 S.Ct. 1468. Nonetheless, it is self-evident that disclosure does not implicate the privacy interests of a third-party when the information in question does not actually "concern[ ] his or her person." *Id.* at 763, 109 S.Ct. 1468.

The Justice Department's principal argument in defense of its proposed redactions is that government sources have a substantial privacy interest in concealing their cooperation with a criminal investigation. *See generally Computer Professionals for Social Responsibility v. United States Secret Serv.,* 72 F.3d 897, 904 (D.C.Cir.1996) ("[T]he names of informants [and] witnesses [in a criminal investigation] ... clearly fall within the scope of Exemption 7(C)."). Based on this rationale, our Court of Appeals has affirmed the redaction of names and other identifying information of cooperating witnesses. *See id.* at 904, 905. Thus, the Justice Department is justified in doing the same. (In this case, it is reasonable to consider the meeting time and place for an informant's liaison with government agents as 'identifying information,' since they may enable Steinberg or others easily to decipher the informant's identity.) The Department is also warranted in withholding the identities of other individuals sporadically named in these documents, who will likewise " 'have their privacy invaded by having their identities and information about them revealed in connection with the [criminal] investigation.' " *Id.* at 904 (quoting *Burge v. Eastburn,* 934 F.2d 577, 579 (5th Cir.1991)).

Yet, these redactions represent a small minority of those proposed by the Justice Department. Consequently, the more relevant issue in this case is the degree to which

the government may rely on its justification—protecting its sources' identities—to withhold the information that its sources have provided. Documents 1 through 6 consist of FBI teletypes describing agent interviews with government sources. The Justice Department contends that the identity of a source may oftentimes be deduced from the substance of what he or she reveals to the government. The Court agrees that the disclosure of highly guarded information may finger a specific source. *See* Mem. of 4/28/98, at 14 ("It is understandable how the public disclosure of highly confidential details about terrorist activities might be traced to particular individuals."). Moreover, it is conceded that FBI special agents are best equipped to make such judgments in individual cases.

■ Accordingly, with regard to documents 1, 3, and 6, the Court has accepted the government's *in camera* representations on June 11 that particular redactions are essential to preserve the anonymity of its sources.[1] These representations were made not by counsel, but by FBI agents present at the chambers conference and personally knowledgeable about the documents' subject matter. The claims were substantial enough in document 6 that most of the text is withheld in full; there remained few segments that were "reasonably segregable" from privileged material. *See* 5 U.S.C. § 552(b); *see generally Vaughn v. Rosen* 484 F.2d 820, 825 n. 19 (D.C.Cir.1973) ("It may be, of course, that the exempt and the non-exempt portions are so inextricably intertwined that it is impossible to separate them."). With regard to documents 1 and 3, however, the agents were unwilling to represent that disclosure of certain segments would in any way reveal the identities of government informants. In those instances, the government's invocation of Exemption 7(C) has not been sustained.

■ With regard to documents 2 and 4, the Justice Department's interest in preserving the privacy of its sources is at its nadir.

This is due to the simple reality that the government has already disclosed to Steinberg the identity of its source for each. In document 2, for example, the government has never redacted the segment on page 2 that identifies Frederick James Lewis as the government's source. Likewise, document 4 as released to Steinberg begins by describing an FBI interview with Gary Howard on January 18, 1985. Having chosen to release the names of its sources, the Justice Department cannot plausibly argue that it is still protecting their identities when it withholds the content of their interviews.

Recognizing that such a position was not tenable, the Justice Department offered on June 11 an alternative application of Exemption 7(C) to justify the substantial redactions from documents 2 and 4. Even when an informant's identity is known, the government argued, the informant has a significant privacy interest in the substance of what he or she discloses to the government. As a general proposition, however, such a privacy claim cannot outweigh a substantial public interest in disclosure. *See supra*, at 6–7. On its face, the Justice Department's view would require courts to accord decisive weight to the privacy stake of an identified source—even when the substance of her testimony exclusively relates to public events. Under such a theory, for instance, the FBI would be compelled to redact Abraham Zapruder's eyewitness account of the Kennedy assassination in order to protect Zapruder's 'privacy,' although his name has been widely publicized. Clearly, such an outcome strays far afield from the design and purpose of Exemption 7(C). When, as here, there is a substantial public interest in the revelations of a source whose identity has been revealed, "the balance characteristically tips" towards full disclosure. *Reporters Committee*, at 776, 109 S.Ct. 1468.

The government's argument is particularly unconvincing in light of the Supreme Court's

---

1. One exception was made in document 6. The government initially claimed that the identity of its source would be compromised by revealing any mention of alleged terrorist activities or of Sri Lanka. Yet, the government's own *Vaughn* index of October 24, 1997 explains that this document contains a candid discussion "about alleged terrorist activities with regard to Sri Lanka and the acquisition of arms." Decl. of Bobbi S. Olivarri, Ex. B, at SA 199–1182–10. The Justice Department has since withdrawn this objection.

holding in *United States Department of Justice v. Landano,* 508 U.S. 165, 113 S.Ct. 2014, 124 L.Ed.2d 84 (1993). In *Landano,* the Court considered redactions under FOIA Exemption 7(D), which privileges the content of confidential source testimony compiled for law enforcement purposes. The Justice Department there argued that courts should always infer a confidential relationship whenever a source provides information to an FBI criminal investigation. The Court rejected this view, holding that the government must demonstrate an express promise of confidentiality to a particular source or must underscore facts about the source from which it would be reasonable to infer an understanding of confidentiality. Yet, the Justice Department's argument now would render *Landano* meaningless. The government could withhold the testimony of any informant, confidential or not, simply by invoking that informant's privacy interest in the substance of his or her revelations.

This is not to deny that in a particular circumstance, the government's position may very well hold true. Just as an anonymous government informant has a privacy interest in concealing the fact of his cooperation, so a known informant might have a privacy interest in concealing the extent or nature of that cooperation. Yet, the Justice Department has not argued here that either Fred Lewis or Gary Howard has a particular privacy interest in concealing the substance of documents 2 or 4. Nor is it evident that the Department should be allowed to make such a claim, in light of the Supreme Court's distaste for applying the Exemption 7(C) balancing test in an ad hoc manner. *See Reporters Committee,* at 776, 109 S.Ct. 1468.

Even still, limited segments of documents 2 and 4 are privileged as private. The second page of document 2 contains Fred Lewis's personal travel plans for late 1984 (including phone numbers where he could be contacted); this is information which does not belong in the public domain. Portions of document 4—on the first page and in the penultimate paragraph—refer to an FBI interview other than the Gary Howard testimony that is otherwise the subject of the teletype. Deletions are necessary to protect the identity of the as-yet-undisclosed source for that interview.

■■■ The remaining documents, number 5 and 7, demand little analysis. In document 5, the government proposes to redact not only the identity of its informant, but also "observations noted by the [unnamed] Special Agent . . . as to the type of personality of the person interviewed." Olivarri Decl., Ex. B, at HQ 199–12167–35. But it is simply not credible to believe that anyone could identify the informant based on the most cursory first impressions of an unidentified observer. Document 7 contains five pages that track payments in various international bank accounts. The Justice Department has argued to withhold them in full primarily because they do not contain Steinberg's name. The pages are nonetheless within the scope of Steinberg's FOIA request, which sought certain documents by file number. *See* Pl.'s Compl., ¶ 17(g). The government has made no showing that their release, after redacting names and account numbers, would identify their source.

### C.

At the *in camera* chambers conference on July 2, 1998, the Court supplied the Justice Department with a new version of the seven Exemption 7(C) documents. Segments stricken in red ink represent material that is properly withheld under Exemption 7(C). The government shall disclose all other portions to plaintiff Steinberg in a timely manner.

\* \* \* \* \* \*

In accordance with this Memorandum, the accompanying Order grants in part plaintiff's motion for summary judgment and dismisses his complaint.

### ORDER

For the reasons stated in the accompanying Memorandum, it is this 2nd day of July 1998 hereby

ORDERED: that plaintiff's Motion for Summary Judgment, or in the Alternative, Discovery, Concerning CIA Information [196] is GRANTED IN PART AND DENIED IN PART; and it is further

ORDERED: that plaintiff's Motion for Admissions [193] is DISMISSED AS MOOT; and it is further

ORDERED: that plaintiff's Motion for a Supplemental Vaughn Submission [195] is DISMISSED AS MOOT; and it is further

ORDERED: that defendant's Unopposed Motion for Enlargement of Time for Submission of Renewed Motion for Summary Judgment [192] is DISMISSED AS MOOT; and it is further

ORDERED: that *on or before July 10, 1998* defendant shall file a copies of the following seven documents—HQ 199–12167–16, HQ 199–12167–30, HQ 199–12167–35, HQ 199–12167–42, SA 199–1182–4, SA 199–1182–10, and WFO 199–4177–1A1—containing only those redactions approved in the Court's July 2, 1998 *in camera* submission to defendant; and it is further

NOTICED: that, all issues having been resolved, this case is closed.