**Gail G. BILLINGTON, Plaintiff,**

**v.**

**DEPARTMENT OF JUSTICE, Defendant.**

**No. Civ.A. 92–0462 RCL.**

United States District Court,
District of Columbia.

Aug. 12, 1998.

---

Gail G. Billington, Leesburg, VA, for plaintiff.

Scott S. Harris, Assistant United States Attorney, United States Attorney's Office, Washington, DC, for defendant.

*MEMORANDUM OPINION*

LAMBERTH, District Judge.

This matter comes before the court on the cross-motions for partial summary judgment, pursuant to Fed.R.Civ.P. 56(c), of plaintiff Gail G. Billington and defendant U.S. Department of Justice and on plaintiff's collateral motions. Based upon the memoranda in support of and in opposition to the cross-motions, the entire record thereto and the relevant law, plaintiff's motions will be granted in part and denied in part; defendant's motion will be granted in part and denied in part.

## I. Background

A. Factual and Procedural History

Plaintiff Gail G. Billington initiated this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. This litigation concerns an enormous amount of documents. Billington originally submitted ninety FOIA requests to thirty FBI field offices between November 1991 and February 1992. She sought information about a number of individuals and organizations associated with the National Caucus of Labor Committees (NCLC).

On February 21, 1992, Billington filed this lawsuit regarding the FBI's compliance with her requests to fifteen of those FBI offices. On July 22, 1992, deliberation over this matter was postponed until May 8, 1995, when Judge George H. Revercomb granted the FBI's Motion to Stay Proceedings. Subsequently, on July 19, 1993, this case was reas-

signed to this court. Since December 1994, the FBI and other agencies have released numerous documents.

The parties agreed in October 1996 to split this litigation into two stages: 1) all documents, including those referred to "referral agencies," except for documents from four specified "Internal Security" files, and 2) the documents from the four "Internal Security" files. At present, the court addresses issues related to the first stage.

· This case involves over 40,000 documents. Processing this number of documents is an enormous task. As illustration to the amount of work involved in this request, the parties corresponded at least 57 times between January 5, 1995 and August 5, 1997 on matters related to processing, cost and release of the documents. In a December 1996 Notice of Filing, Plaintiff provided specifications of challenged documents for this stage from the following twenty subject matters: 1) Baltimore file # BA 196–1284; 2) Indianapolis file # IP 196–1593; 3) New York file # NY 196–3975; 4) New York file # NY 196–4052; 5) Philadelphia file # PH 196–1893; 6) Irene Beaudry; 7) Michael Billington; 8) Campaigner Publications; 9) Caucus Distributors; 10) Executive Intelligence Review; 11) Executive Intelligence Review News Service; 12) Fusion Energy Foundation; 13) Paul Gallagher; 14) International Caucus of Labor Committee; 15) National Caucus of Labor Committees; 16) New Solidarity International Press Service; 17) Publication and General Management; 18) Suzanne Rose; 19) Schiller Institute; and 20) U.S. Labor Party.

Many of the documents had to be referred by the FBI to numerous other governments agencies and entities, including the Internal Revenue Service, Department of Energy, Immigration and Naturalization Service, Central Intelligence Agency, Department of Justice, Department of State, Executive Office of United States Attorneys, Secret Service, the Army Intelligence and Security Command, and the Defense Intelligence Agency.

Defendant began providing *Vaughn* declarations from the FBI and referral agencies in September 1997, and then filed a motion for summary judgment concerning plaintiff's challenges on December 15, 1997. Plaintiff responded with her cross-motion for partial summary judgment and collateral motions on February 3, 1998.[1]

Many of the documents in this case have been filed under seal under the terms of a consent order issued in *LaRouche v. Kelly,* No. 75 CIV 6010 (S.D.N.Y. March 5, 1979).

B. FOIA & Standard of Review

■ The Freedom of Information Act, 5 U.S.C. § 552, as amended by the Freedom of Information Reform Act of 1986, §§ 1801–04 of Pub.L. No. 99–570, 100 Stat. 3207, 3207–48 (1986) establishes a statutory right for citizens to gain access to government information. The Act creates a basic presumption that agency records should be accessible to the public and commands government agencies to make records available upon demand unless the request falls within one of nine exemptions. The defendant justifies nondisclosure by invoking six of the nine exemptions. The court will discuss 1) the contested FBI withholdings by exemption group; 2) the plaintiff's request for additional searches; 3) disputes over cross-reference information and an allegedly wrong document in the *Vaughn* index, *Vaughn v. Rosen,* 484 F.2d 820 (D.C.Cir.1973); and 4) challenges concerning information referred to other agencies.

■ Summary judgment in a FOIA action is appropriate when the pleadings together with the declarations show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby,* Inc. 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202; *Alyeska Pipeline Serv. Co. v. EPA,* 856 F.2d 309, 313 (D.C.Cir.1988) (mere conflict in affidavits not sufficient to preclude an award of summary judgment); *Weisberg v. Department of Justice,* 627 F.2d 365, 368 (D.C.Cir.1980). Courts review FOIA suits de novo. Howev-

---

1. Defendant has also filed a second motion for partial summary judgment which addresses the four "Internal Security" files. This motion will not be addressed herein.

er, the agency carries the burden of justifying nondisclosure, See 5 U.S.C. § 552(a)(4)(B); *U.S. Department of Justice v. Reporters Committee for Freedom of the Press,* 489 U.S. 749, 755, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989).

Agencies may rely on the declarations of its officials in order to sustain their burden of proof in a FOIA case. *See Oglesby v. U.S. Department of the Army,* 920 F.2d 57, 68 (D.C.Cir.1990); *Goland v.. CIA,* 607 F.2d 339, 352 (D.C.Cir.1978). The agency's declarations are accorded a presumption of expertise. *Pharmaceutical Manufacturers Ass'n v. Weinberger,* 411 F.Supp. 576, 578 (D.D.C. 1976.). However, the declarations must be clear, specific and adequately detailed; they must describe the withheld information and the reason for nondisclosure in a factual and non-conclusory manner; and they must be submitted in good faith. *See Hayden v. NSA,* 608 F.2d 1381, 1387 (D.C.Cir.1979). Unless the affidavits are deficient, the court need not conduct further inquiry into their veracity. *Id.* at 1387. A plaintiff must show that the claimed exemption is improperly asserted in order to have a triable issue of material fact that will preclude awarding summary judgment to the defendant.

## II. Exemption 1

Exemption 1 permits agencies to withhold information that is "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) [is] in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). Executive Order 12958 currently controls. Summary judgment may be awarded to a defendant agency invoking Exemption 1 "only if (1) the agency affidavits describe the documents withheld and the justifications for nondisclosure in enough detail and with sufficient specificity to demonstrate that material withheld is logically within the domain of the exemption claimed, and (2) the affidavits are neither controverted by contrary record evidence nor impugned by bad faith on the part of the agency." *Canning v. U.S. Department of Justice,* 848 F.Supp. 1037, 1049 (D.D.C.1994) citing the standards

set forth *King v. United States Department of Justice,* 830 F.2d 210, 217 (D.C.Cir.1987); *see also Halperin v. CIA,* 629 F.2d 144, 148 (D.C.Cir.1980); *Voinche v. FBI,* 940 F.Supp. 323, 328 (D.D.C.1996).

Agencies may meet this burden by "filing affidavits describing the material withheld and the manner in which it falls within the exemption claimed." *King* 830 F.2d at 217. Courts must accord substantial weight to an agency's affidavit concerning the classified status of a disputed record, because " '[e]xecutive departments responsible for national defense and foreign policy matters have unique insights into what adverse affects [sic] might occur as a result of public disclosure.' " *McDonnell v. United States,* 4 F.3d 1227, 1243 (3rd Cir.1993) (quoting *Salisbury v. United States,* 690 F.2d 966, 970 (D.C.Cir.1982)). If the agency's statements meet the aforementioned standard of reasonable specificity and good faith, the court "is not to conduct a detailed inquiry into whether it agrees with the agency's opinions." *Halperin,* 629 F.2d at 148.

Accordingly, this court reviewed the submitted affidavits, *Vaughn* indices and agency actions to determine whether the FBI meets this standard of reasonable specificity and good faith. The following is a discussion of the specific challenges proffered by the plaintiff to compel disclosure of information withheld under this exemption.

### A. Publicly Disclosed Information

In her challenges to Exemption 1 redactions, Billington cites documents which she believes were improperly, withheld or redacted because they had been disclosed publicly. When asserting that material is publicly available, plaintiff bears the burden of production. *Davis v. Department of Justice,* 968 F.2d 1276, 1279 (D.C.Cir.1992); *Afshar v. Department of State,* 702 F.2d 1125, 1130 (D.C.Cir.1983) ("A plaintiff asserting a claim of prior disclosure must bear the initial burden of pointing to specific information in the public domain that appears to duplicate that being withheld."). Both *United States Department of Justice v. Reporters Committee for Freedom of the Press,* 489 U.S. 749, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989), and

the District of Columbia Circuit's public domain cases "require the requester to point to 'specific' information identical to that being withheld." *Davis,* 968 F.2d at 1280. Otherwise, the government would have to prove the "negative—that information has not been revealed," which would require "an exhaustive, potentially limitless search." *Id.* at 1279 (citing *Occidental Petroleum Corp. v. SEC,* 873 F.2d 325, 342 (D.C.Cir.1989)).

As discussed below, Billington challenges a number of withholdings by asserting that they have been released in the public domain.

### 1. Intelligence Methods and Categories of Intelligence Activity

First, Billington contests the FBI's withholding of case characters, described as intelligence activities and representing categories of information. Billington states that many of these intelligence activities previously have been disclosed both in the FBI's Foreign Counterintelligence Manual and in other documents released under FOIA by the FBI. (2nd Canning Decl., ¶¶ 8–10 and Plaintiff's Memorandum, 5). Billington advances similar arguments regarding the disclosure of intelligence methods, pointing to examples where intelligence methods previously have been disclosed under FOIA. (2nd Canning Decl., ¶¶ 13–17 and Plaintiff's Memorandum, 7).

■ The defendant argues that disclosure of such information might assist a hostile analyst's attempt to piece together classified information. (Davis Decl., Sept. 1997, 16–17 and Defendant's Reply, p. 3). The defendant underscores that Executive Order 12958 sec 1.8(e) states: "compilations of items of information which are individually unclassified may be classified if the compiled information reveals an additional association or relationship."

■ Billington counters that the aggregate result is not self-evident and that this court will abandon de novo review if it defers to the FBI's word. This court disagrees. In matters regarding Exemption 1, the aggregate result does not have to be self-evident. In a case where the FBI used similar categories, and the declarations were "not overly categorical in nature, but . . . instead narrowly tailored to reveal as much detail as possible, without disclosing information that must be kept secret in order to protect legitimate national security concerns," the declarations were deemed conducive to meaningful judicial review. *Canning v. U.S. Department of Justice,* 848 F.Supp. 1037, 1044 (D.D.C.1994). Courts are strongly inclined to accept an agency's determination that disclosure of information regarding intelligence sources and methods will cause damage to national security. *Gardels v. CIA,* 689 F.2d 1100, 1106 (D.C.Cir.1982) (this is "necessarily a region for forecasts in which [the agency's] informed judgment as to potential future harm should be respected.").

■ Under FOIA, courts cannot "pry[ ] loose from the government even the smallest bit of information that is properly classified or would disclose intelligence sources or methods." *Afshar,* 702 F.2d at 1130. In *Afshar,* the agency could safeguard such information even where the CIA previously acknowledged the existence of "information that fits into one of the categories of information" at issue. *Id.* Similarly, that the FBI may have released similar types of information in one case does not warrant disclosure here.

Billington pointed to no specific instances where the FBI withheld information in the public domain. Rather, after citing examples of the types of case numbers that the FBI has revealed in the past, she makes a blanket assertion regarding these types of categories: "If these categories of FBI intelligence activities in the cited time frames have been withheld by defendant, they should be disclosed to plaintiff." (Plaintiff's Memorandum, 6). The District of Columbia Circuit held that a plaintiff did not meet his "burden of showing that there is a permanent public record of the exact portions [of tapes] he wishes" by submitting newspaper stories. *Davis,* 968 F.2d at 1280. Similarly, plaintiff does not meet her burden without an exact showing that these activities have been disclosed in these documents.

Without more, this court will not question the defendant's Exemption 1 classification, because there was no "bad faith or a gener-

**56**

al sloppiness in the declassification or review process ..." *Afshar*, 702 F.2d at 1131. The FBI's affidavits sufficiently detail its reasoning for the various levels of specificity which it gave regarding foreign government information, intelligence activities, and/or information relating to foreign relations or activities. Consequently, this court will not second-guess the department's judgment that "disclosure of even publicly known intelligence methods could ... provide hostile analysts with classified information." (Defendant's Reply, 3). Rather, this court defers to the agency's judgment that disclosure would cause such harm to the national security. *See Id.* at 1131. Billington has not met her burden of production and this court grants summary judgment to the defendant regarding these materials.

### 2. Surveillance Efforts Regarding Irene and Pierre Beaudry

Next, Billington asserts that the defendant should have to disclose surveillance efforts regarding Irene and Pierre Beaudry. (Plaintiff's Reply, p. 3). An October 7, 1997 letter from Billington to Assistant United States Attorney Scott Harris addressed the ongoing dispute regarding the "Irene Beaudry" documents. At that time, Billington expressed a series of concerns about the FBI's *Vaughn* indices by Sherry Davis and Bobbie Olivarri, including redactions in the Irene Beaudry documents. Consequently, both Davis and Olivarri submitted supplemental declarations on December 15, 1997, detailing the justifications for the redactions.

■ Olivarri stated that portions were declassified and were being released in their entirety. Other portions were still redacted pursuant to Exemptions 1 and 7(C). Billington argues that the court should award summary judgment on this matter because a document allegedly about the Beaudrys was released to Lyndon LaRouche under a separate FOIA request and not in the instant release. (2nd Canning Decl., ¶ 18). She argues that once the existence of the surveillance efforts has been disclosed, the Beaudry documents should undergo a new declassification.

This court disagrees. The document appears to merely disclose the existence of the teletypes, information which the FBI disclosed in their declarations. (Olivarri Decl., Nov. 1997, ¶ 31). The document, marked OM 196B–1340, apparently from an Omaha office, states at the bottom: "Since these teletypes are in the possession of Alexandria, the reference is provided only as a matter of information."

As the plaintiff has not provided evidence that actual information about the "surveillance efforts" has been released, she has not met her burden of production. In contrast, the defendant provided either the documents, redactions, or the appropriate justifications for withholding the documents at issue. Further, that the FBI may not have released one page which might contain a reference to the Beaudrys in an informational description of another FBI office's investigation does not warrant compelling the FBI to reveal more information about such "surveillance efforts." In addition, defendant agreed, in its reply, to disclose reference to Pierre Beaudry's name in the cited documents.

### 3. FBI Case Numbers

■ Billington asks this court to order the FBI to release FBI case numbers which she states were cited in the CIA's *Vaughn* indices. Defendant counters that release by the CIA does not constitute public disclosure by the FBI.

■ Release of information by one agency does not mandate another agency to disclose the same. A court need not require an agency to "release all related materials any time it elected to give the public information about a classified matter." *Public Citizen v. Department of State*, 11 F.3d 198, 202 (D.C.Cir.1993); *accord Military Audit Project v. Casey*, 656 F.2d 724 (D.C.Cir.1981) (holding that the CIA did not waive the applicability of Exemption 1 to all classified information relating to a subject by voluntarily releasing some formerly classified information about that subject).

This court finds that Billington has not met her burden here. She does not provide specific enough information to determine

why the FBI should release these numbers and where they may have been redacted. Although she "speculates that these are documents in the 'Irene Beaudry' release, in which the FBI has classified the file numbers," she does not give factual proof. (2nd Billington Decl., ¶ 37.) Mere speculation does not satisfy the high burden a requester must meet to prove that information is in the public domain. Even if these numbers were disclosed by the CIA, an agency does not "waive the applicability of FOIA Exemption 1 to all classified information relating to a subject by voluntarily releasing some formerly classified information about that subject." *Public Citizen*, 11 F.3d at 202.

### 4. Intelligence Investigations of New Solidarity International Press Service and the Fusion Energy Foundation

Plaintiff also argues that information about the Intelligence Investigation of New Solidarity International Press Service and the Fusion Energy Foundation should be disclosed because information about these entities has been unveiled. Plaintiff submits a letter from the FBI Director to the Attorney General dated August 19, 1997 (3rd Canning Decl., Exhibit 2) to prove that identical information has been released by the government (Plaintiff's Reply, 5), and consequently that the FBI should have to release further information about the alleged basis and scope of the FBI's investigation of these entities. Billington does not clear the high hurdle necessary to compel disclosure. While the letter discusses the existence of these two entities within the National Caucus of Labor Committees, it does not detail the FBI's investigation of the sub-groups. To the contrary, the letter states that the FBI has no informants in the International Press Service arm of the NCLC. Further, as the defendant states (Defendant's Reply, p. 6), Billington neither specifies how the FBI may have withheld such information, nor points to any specific documents that were withheld. Without such information, this court will not compel the FBI to release documents that may or may not exist. *See Davis*, 968 F.2d at 1280.

### B. Information from Foreign Governments

Regarding Exemption 1 and foreign government information, Billington challenges the adequacy of Special Agent Davis' affidavit, and requests a supplemental submission to state what Davis' "personal review (and information-received) revealed to her, showing that there were explicitly understandings of confidentiality." Countering the withholding of one document, Billington states "it is highly unlikely that the entire document is devoted to the relationship between the FBI and the foreign agency." (Plaintiff's Reply, 6).

This court does not agree that the FBI's affidavits are insufficient. Rather, to compel the agency to supply more information would muddle the purpose of the exemption. *Fitzgibbon v. U.S. Secret Service*, 747 F.Supp. 51, 55–56 (D.D.C.1990). ("Plaintiff's arguments to the contrary are tantamount to a claim that, in order to pass muster, the affidavits must be so specific as to cause the very harm that the exemption was intended to avoid."). It is entirely appropriate for affidavits regarding FOIA's national security exemptions to be somewhat less specific. *See e.g., Abbotts v. Nuclear Regulatory Commission*, 766 F.2d 604, 606 (D.C.Cir.1985) (agency affidavits concerning classified status of documents in a FOIA review entitled to substantial weight). Billington's assertion that it is "highly unlikely" that a particular exemption is appropriate is conclusory. Billington would like the court to apply the tougher approach specified by the Supreme Court in *United States Dep't of Justice, et al. v. Landano*, 508 U.S. 165, 113 S.Ct. 2014, 124 L.Ed.2d 84 (1993). However, as both parties state, *Landano* does not apply to Exemption 1 withholdings, and this court will not, as the plaintiff requests, apply it here.

This court finds no reason to question the basis of Special Agent Davis' Declaration since the affidavit "fairly describes the content of the material withheld and adequately states its grounds for nondisclosure, and ... those grounds are reasonable and consistent with the applicable law." *Spannaus v. Department of Justice*, 813 F.2d

58

1285, 1288 (4th Cir.1987). Davis has been "designated by the Attorney General of the United States as an original Top Secret classification authority and declassification authority pursuant to EO 12958, Sections 1.4 and 3.2." All of her classification determinations were reviewed by the Department of Justice, Department Review Committee. She detailed the justification for both withholding foreign government information generally and within each document with specificity and at length. This court gives the defendant the appropriate deference as the affidavits are reasonably specific and there is no evidence of bad faith. *Halperin*, 629 F.2d at 148.

### C. Classification by the FBI

■ The following regards various documents which Billington challenges because she states that they were redacted in violation of Executive Order 12958, which prohibits classification of information to conceal violations of law or to prevent embarrassment to a person, organization, or agency. Executive Order 12958 § 108(1) and (2).

Billington asserts that withheld text of the "Nolan letter," [2] as well as subsequent communication, "strongly implies" that the foreign official portrayed LaRouche and the publication "Executive Intelligence Review" as agents of Soviet foreign policy. She states that "circumstantial evidence strongly suggests" an effort by the British Governments to suppress LaRouche's influence in the Reagan Administration. She purports that "disinformation in the Nolan letter and the apparently-related documents, may have been classified to shield the FBI and the foreign government from embarrassment, and/or to conceal information about FBI efforts to suppress LaRouche's and EIR's First Amendment activities." (Plaintiff's Reply, 8). In support of her claims, Billington pieces together self-described "circumstantial evidence." She believes that this information should be revealed under Executive Order 12958.

Upon review of the documents, this court does not come to the same conclusion. Billington's speculative evidence does not give this court reason to believe that the FBI classified information in order to conceal embarrassing information. There is simply insufficient evidence to corroborate Billington's theory that the information was classified in order to save the British from embarrassment. Billington does not provide any proof of the FBI's motives in classifying the information. Rather, the FBI stated that it withheld information that was "provided with the explicit understanding that the information and cooperation would remain classified," and that disclosure "could reasonably be expected to cause serious damage to the national security" as it would violate "the FBI's promise of confidentiality." (Davis Decl., Sept. 1997, p. 121).

Courts have refused to allow conclusory accusations to raise "a triable issue or to call for further inquiry" as to the reasonableness of an agency's judgment to disclose Exemption 1 withheld information. *Gardels v. CIA* 689 F.2d 1100, 1106 (D.C.Cir.1982) ("The material in plaintiff's counter-presentation . . . consists of conclusory denials of the Agency's position on the dangers from foreign intelligence . . . At bottom, plaintiff's material does no more than differ from the Agency's informed position which we must accept if plausible and reasonable."). In this case, Billington's evidence whittles down to a string of if-then statements and suggestions of government conspiracy which give this court no basis upon which to even warrant a probe of bad faith. This court finds no reason to doubt the FBI's affidavit or to believe that the FBI was involved in an attempt to cover-up information. The affidavits submitted by the FBI are neither conclusory nor overly vague, and the Court is satisfied that they provide sufficiently specific information to justify the agency's withholding decisions.

■ Furthermore, First Amendment concerns or questions over the FBI's investigation are not at issue in this case. Such accusations are better dealt with by another

2. The document at issue is FBIHQ serial 163–47822–13, a September 24, 1982 letter from an FBI agent to a foreign official. The plaintiff

suggests that other documents in the FBI's *Vaughn* indices may reflect continued communication between these parties.

court. *Smith v. Bureau of Alcohol, Tobacco and Firearms,* 977 F.Supp. 496, 500 (D.D.C. 1997) (stating that allegations a federal prosecutor violated constitutional rights to exculpatory evidence are better addressed by the district court where the plaintiff was convicted).

Likewise, plaintiff makes conclusory accusations regarding Document Number 2 of N.Y.196B–4052. She asserts that this document partially disclosed a number of indices search slips, including one on the "LaRouche Campaign." She suggests that if the withheld file information "reflects illegal, improper, or embarrassing Government intelligence activity conduct against a U.S. presidential campaign, it is improperly classified." (Plaintiff's Memorandum, 13). She points to the "array of 'dirty tricks' (including 'Watergate') conducted for the Nixon Administration against the DNC and Democratic candidates by various agencies ..." (Plaintiff's Reply, p. 8, footnote 6) to prove that such conduct has occurred before.

This court will not entertain irrelevant arguments about previous Presidential campaigns. Plaintiff advances unsubstantiated accusations by inferring, without substantive proof, that the FBI is engaged in some sort of "dirty tricks" campaign. Such arguments are of no value. Accordingly, this court will not compel the disclosure of these lines of text.

The defendant is entitled to summary judgment regarding these and the previously discussed Exemption 1 claims. The FBI used proper classification procedures and has shown that the withheld material falls within the boundaries of Exemption 1. Billington's assertions have neither controverted the defendant's affidavits nor raised doubts about its good faith.

**III. Exemption 2:**

■ 5 U.S.C. § 552(b)(2) exempts from mandatory disclosure records "related solely to the internal personnel rules and practices of an agency." Exemption 2 protects internal agency matters so routine or trivial that they could not be subject to a genuine and significant public interest. *Department of the Air Force v. Rose,* 425 U.S. 352, 96 S.Ct.

1592, 48 L.Ed.2d 11 (1976). Trivial administrative data such as file numbers, mail routing stamps, initials, data processing notations, and other administrative markings may be withheld under Exemption 2. *Lesar v. U.S. Department of Justice,* 636 F.2d 472 (D.C.Cir.1980) (informant codes held a matter of internal significance in which the public has no substantial interest and which bear no relation to the substantive contents of the records released).

■ Challenging Exemption 2 withholdings, Billington points to two documents that may have been improperly redacted initially. One document redacts only one line which was subsequently disclosed. She calls the original withholding improper as it was a redaction of an agency name, and she believes that such a redaction does not "relate[ ] solely to the internal rules and practices of the agency." 5 U.S.C. § 552(b)(2). The original redactions of the other document were disclosed after referral to another agency. Billington asks for disclosure of any agency names which remain withheld under Exemption 2. Defendant counters that Billington has presented no proof that the FBI asserted Exemption 2 simply to withhold "agency names," or that the FBI engaged in bad faith. (Defendant's Reply, 10).

As the relevant withholdings have been released and Billington does not point to any other documents where the defendant may have similarly withheld information, this court need not address the merits of redacting agency names. Rather, the court must make a determination whether these examples justify compelling the FBI to reprocess Exemption 2 redactions.

■ These two examples hardly warrant a complete review of Exemption 2 redactions. When documents are released within two years of their original exemption claims, a district court must examine closely the initial claims. *Bonner v. U.S. Department of State,* 928 F.2d 1148, 1151 (D.C.Cir.1991). While a full release of documents previously withheld does not demonstrate bad faith, doubt may be cast on the agency's original exemption claim when the information in question is found releasable within two years. There-

fore, a district court must examine closely the initial exemption claims. *Id.* A *Vaughn* index for documents that are part of a representative sample should explain why the once withheld portions were excised at the agency's initial review. If the court determines that the original exemption claims for "significant portions" of the original documents do not survive, the propriety of other withholdings may be called into question. *Id.* at 1153.

The examples presented by the plaintiff are so slim that there are no "significant portions." Although reprocessing the entire group may result in further declassification, the purpose of sampling is to reduce the administrative burden of large FOIA requests. *Id.* Without further evidence of initial improper withholdings, there is no reason to doubt the agency's Exemption 2 redactions and this court will neither order their disclosure nor compel review of other Exemption 2 withholdings. Accordingly, summary judgment regarding this exemption is granted to the defendant.

## IV. Exemption 3 and Exemption 5

Defendant supported the use of Exemptions 3 and 5—5 U.S.C. § 552(b)(3) and 5 U.S.C. § 552(b)(5) respectively—by the FBI and other agencies in its Motion for Partial Summary Judgment. Plaintiff did not challenge or even mention these exemptions in her cross-motion. Without more, this court finds defendant's arguments persuasive and grants summary judgment to the defendants for materials withheld pursuant to both Exemptions 3 and 5.

## V. Exemption 7(C)

5 U.S.C. § 552(b)(7)(C), as amended by Pub.L. No. 99–570, 1802 (1986) exempts information that could reasonably be expected to constitute an unwarranted invasion of personal privacy. Plaintiff challenges 7(C) redactions on different levels. First, she asserts the FBI improperly redacted confidential information not covered by the exemption. Second, she states that, in accordance with the Exemption 7(C) test, the privacy interests at issue are outweighed by the public interest in favor of disclosure. Third, she questions the validity of redactions con-

cerning individuals who provided privacy waivers. Fourth, she objects to the withholding of information regarding a deceased person. Finally, she points to previous government disclosure of the same information. The court will review each one of these challenges in detail.

### A. Information from Non–Confidential Sources

Billington provided partially unredacted versions of certain documents which she states were previously released by the United States and the State of California. According to Billington, a comparison of the redacted versions released by the FBI in this case with non-redacted versions previously released "shows that huge amounts of information" has been improperly withheld under Exemption 7(C). She asserts that the segregable non-exempt information should have been disclosed. (Plaintiff's Memorandum, 16).

■ According to the declaration of Bobbie Olivarri, the FBI invoked Exemption 7(C) to protect "identities of third parties interviewed and personal information about them, such as file numbers, addresses, telephone number and criminal record information." (Olivarri Decl., Sept. 1997, ¶ 271). Plaintiff argues that these redactions are invalid because the Olivarri declaration states that the FBI withheld "information received," rather than just "unique identifiers."

Plaintiff cites *Washington Post Co. v. United States Dep't of Justice*, 863 F.2d 96 (D.C.Cir.1988) to support her position that information about sources is limited to their names and other identifying information, such as aliases and addresses. However, in *Washington Post*, the court allowed for the disclosure of a name, because the redacted document was prepared by a company for its own business purposes, and therefore disclosure did not divulge whether the individual was a target of any law enforcement investigation or whether the individual was considered to have any relevance to their inquiry. *Id.* at 101. This is quite different from the situation at bar and is not relevant to this court's inquiry.

▇ That Billington has access to unredacted versions of the documents is not evidence in and of itself that the defendant must disclose the information. An agency is not compelled to release information just because it may have been disclosed previously. *U.S. Department of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 769, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989) ("Even though the summaries, with only names redacted, had once been public, we recognized the potential invasion of privacy through later recognition of identifying details, and approved the Court of Appeals' rule permitting the District Court to delete other identifying information in order to safeguard this privacy interest."); *Halloran v. Veterans Administration*, 874 F.2d 315, 322 (5th Cir.1989) (holding that otherwise-private information may have been at one time or in some way in the "public" domain does not mean that a person irretrievably loses his or her privacy interests in it).

This court reviewed the unredacted versions of the documents in order to determine whether they were redacted appropriately. The court's review reveals that most of the information redacted by the FBI in this release was valid. Few are questionable.[3] It is important to note that Exemption 7(C) encompasses any disclosure that "could reasonably be expected to constitute" such an invasion. *McDonnell v. United States*, 4 F.3d 1227 (3rd Cir.1993); see *Reporters*, 489 U.S. at 756, 109 S.Ct. 1468; see also *Keys v. U.S. Department of Justice*, 830 F.2d 337, 346 (D.C.Cir.1987) (government need only demonstrate reasonable expectation of invasion of personal privacy to invoke Exemption 7(C)). While it is true that the redactions withheld "information received," with few exceptions, those redactions withheld data that might otherwise reveal identities of persons who the FBI seeks to protect by its Exemption 7(C) redactions. For example, many of the redactions which Billington challenges relate details of discussions and meetings that took

place between various sources and members of the LaRouche organization. Participants could easily identify the source if details of the meeting were unredacted.

▇ Plaintiff argues that many of the redactions withheld information about individuals from whom she had privacy waivers. Billington points to one such instance in the Second Canning Declaration, Exhibit 10. The relevant paragraphs, however, prove just the opposite. While an agency must disclose information regarding those who provided privacy waivers, the agency must still redact such information if it would otherwise reveal the identity of individuals who have not waived their rights. *Computer Professionals for Social Responsibility v. U.S. Secret Service*, 72 F.3d 897, 904 (D.C.Cir. 1996).

Although the documents redact information about Steinberg and Goldstein, who both provided privacy waivers to Billington, the FBI did not unreasonably redact their names. Very few people would have been privy to the redacted information. In context, this is exactly the type of information which would identify sources to parties with knowledge about the case. Therefore, Goldstein and Steinberg likely could identify the person who provided the information just by reading those paragraphs. As such, the defendant withheld the redacted information to protect another confidential source rather than the identities of the persons who signed privacy waivers. Disclosure of this type of information would counter the purpose of Exemption 7(C). *Nation Magazine v. U.S. Customs Service*, 71 F.3d 885, 896 (D.C.Cir. 1995) ("to the extent any information contained in 7(C) investigatory files would reveal the identities of individuals who are subjects, witnesses, or informants in law enforcement investigations, those portions of responsive records are categorically exempt from disclosure ..."). Accordingly, the court does not agree with this element of the plaintiff's challenges.

---

**3.** For example, the following redacted sentence does not appear to disclose information that might invade an individual's privacy: "In addition a new packet of information regarding WELD's background as it pertains to his suitability to be named to head the Criminal Division at the DEPARTMENT OF JUSTICE (DOJ), would be distributed in the home districts of all of the members of the Senate Judiciary Committee." (Unredacted version of document disclosed in 2nd Canning Declaration, Exh. 9).

**62**

Billington further requests that the court order disclosed all other non-identification information presently withheld under Exemption 7(C) which she listed. However, as the court does not find sufficient evidence that the defendant improperly withheld the discussed information, this court will not order either reprocessing or disclosure of that information.

**B. Whether Any Privacy Interest Is Outweighed by the Public Interest in Disclosure**

When determining whether to order an agency to disclose information withheld pursuant to Exemption 7(C), a court must weigh the public interest in disclosure against the privacy interest at stake. *Reporters*, 489 U.S. at 762, 109 S.Ct. 1468. In *SafeCard*, the Court of Appeals of this circuit held "categorically that, unless access to the names and addresses of private individuals appearing in files within the ambit of Exemption 7(C) is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure." *SafeCard Services, Inc. v. Securities and Exchange Commission*, 926 F.2d 1197 (D.C.Cir.1991). While "official information that sheds light on an agency's performance of its statutory duties falls squarely within" the purpose of FOIA, "the purpose is not furthered ... by disclosure of information about individuals 'that is accumulated in ... governmental files but that reveals little or nothing about an agency's own conduct.'" *Albuquerque Publishing Company v. United States Department of Justice*, 726 F.Supp. 851 (D.D.C. 1989) (quoting *Department of the Air Force v. Rose*, 425 U.S. 352, 372, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976)).

On the privacy side of the scale, disclosing the identity of subjects of investigations, potential defendants, interviewees, law enforcement personnel and witnesses "can subject them to embarrassment and potentially more serious reputation harm." *SafeCard*, 926 F.2d at 1205; *see also Baez v. U.S. Department of Justice*, 647 F.2d 1328, 1338 (D.C.Cir.1980). Consequently, an agency may be justified in refusing to disclose the identities of such individual because Exemption 7(C) "affords broad[ ] privacy rights." *Bast v. U.S. Department of Justice*, 665 F.2d 1251, 1254 (D.C.Cir.1981).

Billington challenges a number of the 7(C) redactions by stating that several individuals whose identities were redacted have "diminished privacy interests" because they were prosecution witnesses[4], appeared on television[5], and/or provided information under immunity.[6] Billington also states that the FBI wrongfully redacted material pertaining to Donald Moore, a county deputy sheriff. According to Billington, Moore gave an interview to a local newspaper about his involvement in the "LaRouche" investigation, testified extensively about his involvement in federal and state courts, among other things.

Courts have been reluctant to deem a privacy interest "diminished." In limited situations government officials may have a "somewhat diminished" privacy interest if they take certain actions, such as speaking to the press. *Kimberlin v. Department of Justice*, 139 F.3d 944, 949 (D.C.Cir.1998) (quoting *Quinon v. FBI*, 86 F.3d 1222, 1230 (D.C.Cir.1996)); *Fund for Constitutional Gov't v. National Archives and Records Serv.*, 656 F.2d 856, 865 (D.C.Cir.1981). However, even in such situations, the remaining privacy interest often will prevent disclosure of "the details of the investigation, of his misconduct, and of his punishment." *Kimberlin*, 139 F.3d at 949 (quoting *Bast*, 665 F.2d at 1255). Official confirmation of additional details could reasonably be expected to invade the official's privacy. *Kimberlin*, 139 F.3d at 949.

4. According to Billington, Wayne Hintz, Martha Van Sickle, Richard Yepez testified as prosecution witnesses at state and federal trials. (Plaintiff's Memorandum, 19–20)

5. Billington states that Van Sickle appeared on a national television show during final pretrial hearings of one of the Virginia state trials. (Plaintiff's Memorandum, 19–20)

6. Richard Yepez, according to Billington, provided information to the Government under a written promise of immunity. (Plaintiff's Memorandum, 19–20)

■ Furthermore, Canning definitively states that documents correspond to Hintz, Yepez, and Van Sickle respectively. However, the documents do not identify these individuals as such and the FBI does not have to confirm or deny that they redacted these names. That plaintiff might be able to determine whose names were redacted does not in itself act as a waiver or "undermine[ ] the privacy interest of these individuals in avoiding harassment and annoyance..." *Smith*, 977 F.Supp. at 500 (quoting *Weisberg v. United States Dep't of Justice*, 745 F.2d 1476, 1491 (D.C.Cir.1984)).

On the other side of the 7(C) balance, Billington declares a strong public interest in disclosure of government activity, particularly government misconduct in the "LaRouche" investigations and prosecutions, against the NCLC and the LaRouche movement. She adds that disclosure of government suppression of *"Brady"* information is in the public interest.[7]

■ Billington argues that the government suppressed evidence during these trials, because these witnesses may have submitted false testimony. However, her evidence merely points out that these witnesses may or may not have provided false testimony. (2nd Canning Decl., ¶¶ 30–84). Even if Billington were to establish a sufficient public interest, defendant suggests that she does not explain how the production of this private information will support allegations that the agency engaged in illegal activity. Under *SafeCard*, she must show that the information sought "is necessary in order to confirm or refute that evidence." *SafeCard*, 926 F.2d at 1205–06. Billington responds that information about or provided by Hintz, Van Sickle, and Yepez would have been exculpatory in the federal trial, but was not disclosed (Plaintiff's Reply, 10). However, her evidence often points to suggestions that these witnesses subsequently disclosed con-

tradictory information, not that the FBI hid that information. *Trupei v. Huff*, No. Civ.A. 96–2850 1998 WL 8986, *4 (D.D.C. Jan. 7, 1998).

■ More to the point, requests for Brady material are "outside the proper role of FOIA." *Johnson v. U.S. Department of Justice*, 758 F.Supp. 2, 5 (D.D.C.1991). In *Johnson*, the court held that:

> The FBI is not required to determine whether or not a paper sought by a FOIA requester is or is not a paper that presently constitutes or retroactively would have constituted Brady material in one or more state or federal prosecutions. Nor is the FBI required by FOIA to forego a statutory exemption for a document in its possession because the document has been identified as possibly exculpatory. Judicial process is available, both pre-trial and post-trial, for these purposes.

The fact that Billington seeks exculpatory statements that she believes should have been produced at trial under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) does not give her "any greater rights under the FOIA than any other person would have." *Smith*, 977 F.Supp. at 499; *see also Engelking v. Drug Enforcement Administration*, 119 F.3d 980, 980–981 (D.C.Cir.1997) (holding that to the extent that plaintiff "seeks exculpatory information, a requester's personal need for information is immaterial to whether that information is protected from disclosure by one of the exemptions to the FOIA.").

■ Plaintiff also attempts to prove illegal agency conduct by linking Moore with the FBI. She stated, through Canning's declaration, that the FBI received the "fruits of Moore's warrantless searches." (2nd Canning Decl., ¶¶ 83–84). However, as proof of these charges Canning uses phrases such as "appears to reflect the FBI's having received

---

7. Billington believes that crucial elements of Hintz's testimony released after trial was contrary to his public testimony. In addition, she states that Van Sickle submitted information in a recent affidavit that contradicted her trial testimony. She also points to a recently disclosed letter from Van Sickle's attorney to a Boston prosecutor which allegedly contradicts her testimony and motivations. Further, Billington purports that exculpatory information about the circumstances of Yepez's federal testimony was not disclosed to the defense in either trial in which he testified.

the fruits of Moore's warrantless search" and "creates a strong inference."

Furthermore, as defendant points out, Billington does not state how the disclosure of private information will confirm or refute her allegations that the agency engaged in illegal activity. While she states that the redacted "identifying" information will "likely" include information about illegal government actions (Plaintiff's Reply, p. 12), she does not point to specific 7(C) redactions which would include such information. Such speculation does not sufficiently meet the standard of possible illegal agency conduct necessary for the public interest in disclosure to outweigh the privacy interest.

■ Moreover, Moore's alleged illegal activities do not comprise illegal conduct by the Department of Justice. *See e.g., Quinon*, 86 F.3d at 1231 (holding that the "relevant question in determining there is public interest in disclosure is whether the FBI, not Chief Judge Tjoflat, has engaged in wrongdoing."). In addition, this court will not compel the disclosure of information which might associate an individual with criminal activity. *Dunkelberger v. Department of Justice*, 906 F.2d 779, 781 (D.C.Cir.1990) ("Exemption 7(C) takes particular note of the strong interest of individuals, whether they be suspects, witnesses, or investigators, in not being associated. unwarrantedly with alleged criminal activity.").

In addition, plaintiff's suggestion that the FBI solicited illegal warrantless searches, violating the Fourth Amendment, is a charge that would best be handled by the district court where the prosecution tried the case. *Smith*, 977 F.Supp. at 500 (stating that allegations the a federal prosecutor violated constitutional rights to exculpatory evidence are better addressed by the district court where the plaintiff was convicted.)

### C. Deceased Individual

■ Plaintiff asks that Exemption 7(C) redactions about Edwin See be disclosed, since he is deceased.[8] As Billington has now provided the appropriate death certificate, defendant should determine and disclose appropriate information about Edwin See. It should be noted, however, that the Court of Appeals of this circuit recently held that "although the privacy interest of the deceased may be reduced," the public interest still must merit disclosure. *Reiter v. Drug Enforcement Administration*, No. 97–5246, 1998 WL 202247, *1 (D.C.Cir., March 3, 1998) (citing *Davis*, 968 F.2d at 1282).

### D. Government Disclosure of Same Information

■ Plaintiff requests that the government release information which it had previously disclosed to another requester but withheld from her. She provides copies of such documents, described as "interview reports."[9] In consideration of these documents, defendant responds that the information "may have been provided" because privacy waivers were specifically provided in those FOIA requests which produced the documents. On behalf of Billington, Canning retorts that he has found no indication that privacy waivers were submitted in those FOIA requests. (Fourth Canning Decl., ¶ 9–13.)

That Canning has found "no indication" that privacy waivers were submitted is not sufficiently convincing that they did not exist. However, this court agrees that the FBI should re-process these documents so that previously released information is released along with the information disclosed in this case. Plaintiff met her initial burden of production by pointing to "specific information in the public domain" that had been "officially acknowledged" or in the "public domain." *Afshar*, 702 F.2d at 1130–34 (D.C.Cir.1983);

---

8. Billington originally stated that Edwin See was dead, but did not provide the relevant documents to prove so. In response, the defendant noted that plaintiff did not submit proof of death. Consequently, plaintiff filed a copy of See's death certificate in her March 30, 1998 Notice of Filing.

9. These documents are part of the Michael Billington release. They are identified as Billington # 35, 36, 42 and 53. In addition, as identified by Canning and Billington, EIR # 9 ("The Nolan Letter") is also included in this group of documents.

*accord Fitzgibbon v. CIA,* 911 F.2d 755, 765–66 (D.C.Cir.1990). In contrast, the defendant did not meet its "ultimate burden of persuasion." *Davis,* 968 F.2d at 1279.

Defendant argued that providing documents would simply create additional work without any resulting benefit for plaintiff, and that the plaintiff did not account for the possibility that information may have been provided in response to other FOIA requests. While this court does not desire to create "additional work" for the defendant, this reasoning is not sufficient. Secondly, Billington addressed the privacy waiver issue in her Response. Defendant, who would be able to definitively state whether privacy waivers were provided, did not meet its burden by simply conjecturing that privacy waivers might have been provided. Accordingly, the defendant is ordered to reprocess the aforementioned documents.

Billington also requests the disclosure of information about Dorothy Hintz. In contrast, Billington has not sufficiently pointed to public domain information about Dorothy Hintz. Rather, the Canning declaration cites two documents, one which contains her name, and another which he states disclosed her name but that is not legible. This evidence is unpersuasive and the court will not order the defendant to turn over an unredacted version of the document. Further, the fact that Ms. Hintz may have been present at interviews with her husband, as plaintiff states, and that one redacted document is "apparently" an interview with her, does not convince this court that such information must be disclosed.

## VI. Exemption 7(D)

5 U.S.C. § 552(b)(7)(D) (FOIA), exempts from disclosure agency records "compiled for law enforcement purposes ... by criminal law enforcement authority in the course of a criminal investigation" if release of those records "could reasonably be expected to disclose" the identity of, or information provided by, a "confidential source."

### A. Expressed Confidentiality.

Plaintiff challenges documents redacted under Exemption 7(D) by referring to the description of categories (b)(7)(D)–3 and –7 in the FBI's declarations of Bobbie Olivarri. (Olivarri public decl., Sept. 1997, ¶ 243). However, in her cross-motion for summary judgment, she pointed only to paragraphs which describe, generally the justification for these types of withholdings without pointing to specific documents. Defendant states that the plaintiff does not draw the court's attention to any particular documents on which the FBI allegedly did not adequately explain its basis for redacting. Defendant posits that there must be some instances on which the FBI's assurances that such an express promise was made must be taken at face value. (Defendant's Reply, p. 18). Subsequently, plaintiff identifies documents which contain these redactions. However, she still does not give specific reasons for challenging the redactions.

Plaintiff requests that the court order the FBI to disclose any place where a "confidential" designation, such as "(PROTECT IDENTITY)" may have been withheld. Pending that disclosure, Billington asks that the court withhold judgment on the application of Exemption 7(D).

■ A source is confidential if the source " 'provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred.' ... A source should be deemed confidential if the source furnished information with the understanding that the FBI would not divulge the communication except to the extent ... necessary for law enforcement purposes." *U.S. Department of Justice v. Landano,* 508 U.S. 165, 171–174, 113 S.Ct. 2014, 124 L.Ed.2d 84 (1993) (quoting S.REP. NO. 1200, 93rd Cong., 2d Sess. 13 (1974), reprinted in 1974 U.S.CODE CONG. & ADMIN.NEWS 6285, 6291).

■ On this issue, both the defendant and plaintiff make somewhat vague statements to challenge and support the Exemption 7(D) redactions of expressed confidentiality. Therefore, this court must assess whether the FBI appropriately redacted the documents. First, the court disagrees that the defendant did not adequately state the basis of Olivarri's knowledge. In her Sep-

tember declaration, Olivarri states that "all information contained herein is based on information furnished to me in my official capacity." (Olivarri Decl., August 1997, ¶ 3). Plaintiff did not point to any specific information that might counter this. In previous cases, courts have found affidavits submitted by specialists assigned to review FOIA requests sufficient when asserting 7(D) redactions pertaining to express promises of confidentiality. *Plazas–Martinez v. Drug Enforcement Administration*, 891 F.Supp. 1, 4 (D.D.C.1995) ("Given this information in the affidavit, there is no doubt that the informant must be considered confidential at the time of the express promise of confidentiality for purposes of (b)(7)(D).").

▇▇▇ Plaintiff requests that the court determine whether these documents were redacted in bad faith and, if so, whether it should conduct an *in camera* review of these 7(D) redactions. *In camera* inspection may be appropriate in two circumstances: when agency affidavits are insufficiently detailed to permit meaningful review of exemption claims, and when evidence of agency bad faith is before the court. *Lam Lek Chong v. U.S. Drug Enforcement Administration*, 929 F.2d 729, 735 (D.C.Cir.1991). Agency affidavits are sufficient, and do not necessitate *in camera* review, where they provide a specific narrative description of the creation of the documents and set forth specific reasons for the invocation of each exemption. *Id.*

A review of the documents at issue gives the court a clear indication that the FBI acted in good faith. For example, some of the documents which plaintiff challenges specifically state that the information was obtained from a confidential source, such as 196B–942SubA–5 (Billington Document 7). All the "Billington" documents which plaintiff raises concerned a legitimate law enforcement investigation file into fraud by wire. Regarding other documents, such as AXZ 93–86–11 (Campaigner # 15), AX 93–86–16 (Campaigner # 17), AX 93–86–17 (Campaigner # 18) and AX 93–86–18 (Campaigner # 19), Olivarri specifically states that redactions were made to protect individuals who requested confidentiality. In another example, NCLC Document # 29, the line right

before the redaction states: "Sources of your Cleveland office have provided information to the effect that ..." The affidavits and documents satisfy this court that the FBI appropriately redacted the documents.

▇▇▇ Plaintiff also charges bad faith because the FBI withheld a document from plaintiff under (b)(7)(D)–3 which was released to another requester. She states that the passage has only the vaguest references to sources and no indication that confidentiality was requested by the sources. This court will not determine that an agency acted in bad faith with findings that one document may have been wrongly redacted. A large number of documents were requested and disclosed in this case. One document in such an enormous document request is merely a needle in a haystack. That one FBI agent may have redacted a document differently then another, or that the same FBI agent did not redact a document in precisely the same manner in different years, does not constitute bad faith. *See Campbell v. U.S. Department of Justice*, No. 89–CV–3016, 1996 WL 554511, *3 (D.D.C., Sep. 19, 1996) (holding that a document's prior release by other sources does not constitute evidence of bad faith).

Consequently, this court does not find that the FBI made inappropriate redactions regarding Exemption 7(D) and promises of "expressed confidentiality." Such redactions clearly fall within the ambit of Exemption 7(D). Without more, this court will not order an *in camera* review.

### B. Implied Confidentiality

The standard for Exemption 7(D) "implied confidentiality" redactions was set forth by the Supreme Court in *Landano*. When determining the appropriateness of a 7(D) redaction, an agency is "not entitled to a presumption that a source [for the FBI in a criminal investigation] is confidential ... more narrowly defined circumstances ... can provide a basis for inferring confidentiality." *Landano*, 508 U.S. at 181, 113 S.Ct. 2014. The Court determined that there may be generic circumstances which warrant inferring an implied assurance of confidentiality. *Id.* at 179, 113 S.Ct. 2014. The Court

identified two elements that can justify such a presumption: 1) when circumstances such as the nature of the crime investigated and 2) the witness'. relation to it support an inference of confidentiality. *Id.* at 181, 113 S.Ct. 2014.

Plaintiff challenges redactions made pursuant to the Exemption 7(D) "implied confidentiality" standard. She refers the court to the FBI's categorical explanations for this exemption, but does not specifically highlight any individual redaction. Instead, she accuses the FBI of making a "scurrilous characterization" (Plaintiff's Reply, p. 16) in its description of the NCLC, providing evidence that the FBI inaccurately characterized the NCLC as violent. She also argues that such information regarding the NCLC was provided only in the second part of the litigation.

■ Justifying its 7(D) withholdings, in her March 1998 declaration Olivarri described the violent nature of the NCLC, as evidence that sources would expect confidentiality.[10] This court finds that these are exactly the type of serious offenses which would warrant inferences that sources supplying such inside information to the FBI would risk retaliation, harassment, and bodily harm. *Williams v. Federal Bureau of Investigation,* 69 F.3d 1155, 1159 (D.C.Cir. 1995) (holding that 7(D) applies to withholdings about sources who would have inferred confidentiality because they were "sufficiently close" to a group suspected of "rebellion or insurrection, seditious conspiracy, and advocating overthrow of the government," and because they were "at risk of retaliation, harassment, and bodily harm").

It is not for this court to conduct a de novo review to determine whether NCLC was, in fact, a violent organization. It is reasonable to conclude that those who supplied information and believed that the organization was violent would consequently expect confiden-

tiality. Furthermore, while it is true that this information about the NCLC was contained in an affidavit having to do with the second part of this litigation, the court will not order the defendant to supply a supplemental affidavit stating the same thing. Similar to this case, a defendant satisfied Exemption 7(D) *Landano* requirements by "describing the circumstances under which informants provided information to defendant" and where the "plaintiff proffer[ed] no evidence to suggest otherwise." *Steinberg v. Department of Justice,* Civ.A. No. 93–2409(LFO) (D.D.C. Oct. 31, 1995). In the instant case, plaintiff does not sufficiently challenge those redactions. Accordingly, this court will not, as plaintiff requests, defer rulings on these withholding until future rulings are made on the "internal security" files. (Plaintiff's Reply, 17). Summary judgment as to these 7(D) redactions is granted to the defendant.

### C. Source Information in Civil Litigation

In view of factual issues raised by the plaintiff regarding documents in Alexandria file 93–86, the defendant agreed to reprocess the following documents by May 15, 1998: Campaigner # 15, 17–19, 23, 25 & 26. The defendant is ordered to submit an affidavit on the status of those documents.

### D. Requesters or Recipients of FBI Information

■ In certain instances, the defendant made Exemption 7(D) redactions in order to withhold the identities of foreign governments who solicited information from an agency. The defendant argues that this identifying information should be redacted in the interest of cooperation between the FBI and agencies. Otherwise, defendant contends, if the identities of foreign agencies which "regularly solicit[ ] and receives infor-

---

**10.** **The declaration states:** "[I]nvestigation into the NCLC revealed that this group was a violence-oriented Marxist, revolutionary organization who[se] aims were to replace democracy in the United States with a communist form of government. During the FBI's investigation into the NCLC, many instances were reported of repeated patterns of harassment and abuse by the NCLC members against other individuals and organizations. Sources who provided the FBI with information on the NCLC including among others, those who had experienced harassment or abuse at the hands of the NCLC, were contacted by the NCLC, or were in some way connected the NCLC. Due to the violent nature of this organization, a very real fear of retaliation existed for these sources . . ."

68

mation" were revealed, cooperation "would be greatly diminished." (Olivarri Decl., Sept. 1997 ¶ 290). Plaintiff counters that this exemption covers *sources* who provided information to the agency on a confidential basis, and not requesters or recipients of information.

This court finds the latter argument more persuasive. An implied confidential relationship can be established by information relayed between state, local and foreign law enforcement agencies and the FBI. *Campbell v. Department of Justice,* No. CIV.A. 89–CV3016, 1996 WL 554511, at *9 (D.D.C. Sep.19, 1996) ("The government withheld identities and information provided by third parties and non-federal and foreign law enforcement agencies in connection with investigations related to national security... Given the customary trust established for relaying information between state, local, and foreign law enforcement agencies and the FBI, the court concludes that an implied confidential relationship was established."). However, this implied confidentiality applies when an agency redacts the identity or information from a source. Defendant has not sufficiently established that the redacted entity was a confidential source. A relationship between the United States and foreign government entities is not sufficient to justify such redactions. *Linn v. Department of Justice,* No. CIV.A. 92–1406, 1995 WL 417810 (D.D.C. June 6, 1995) (holding that an affidavit stating that a "long-standing agreement between the Interpol–United States National Central Bureau and the foreign Interpol national central bureaus that their confidentiality will be maintained" was insufficient information to justify Exemption 7(D) redactions.)

In this case, the FBI's affidavit describes the importance of protecting the identities because of an inherently confidential relationship. However, the FBI does not state, nor does it give the court any reason to believe, that the redacted foreign entity was a confidential source. Rather, the defendant's reasoning seems to fit under either a

public interest Exemption 7(C) element or as a national security Exemption 1 justification.

In addition to the FBI's affidavit, a review of the documents indicates that these were redactions of entities who received rather than gave information from the FBI.[11] The affidavit regarding one document in particular, HQ 163–47822–5, details a questionable redaction as the FBI's affidavit states that the FBI processed the document after referring it to a number of agencies who all stated that the document did not come from their respective agencies. Subsequently, the FBI processed the document. The FBI's explanation does not satisfy their obligation under Exemption 7(D) as it does not establish a basis for knowledge about the confidentiality of the alleged source. The affidavit descriptions of HQ 163–56797–1, HQ 163–56797–1 NR (EIR # 29), and HQ 163–56797–6 state that the entities requested confidentiality, but did not state that the entities were confidential sources. If the FBI can provide sufficient justification for the redaction of these documents and the other documents still at issue, this court will not compel release of the redactions. Accordingly, summary judgment is inappropriate here and this court orders the FBI to submit an additional affidavit, with as much specificity as possible, describing the documents at issue and stating its reasoning for the redactions.

E. Forest Lee Fick and Don Moore

 Plaintiff argues that the defendant should release information concerning Forest Lee Fick, because he "was an FBI source," "gave at least one newspaper interview... and stated that he provided information to the Government and testified before the Grand Jury." (Plaintiff's Memorandum, 31). She maintains that Donald Moore made similar disclosures about himself. None of these reasons presumptively waive the confidentiality of a source. Information withheld under Exemption 7(D) applies to information given by an informant who was confidential at the time, even if the informant later testifies at trial. See *Parker v. Dep't of Justice,*

11. The documents at issue are PH 196B–1893–143, HQ 163–47822–5, HQ 163–47822–NR (EIR # 17), HQ 163–47822–18 (EIR # 18), HQ 163– 47822–30, HQ 163–56797–1, HQ 163–56797–1 NR (EIR # 29), and HQ 163–56797–6.

934 F.2d 375 (D.C.Cir.1991); *accord Davis*, 968 F.2d at 1281. Plaintiff does not provide sufficient evidence that either exhibited a "complete disregard for confidentiality." See *Parker*, 934 F.2d at 378. The FBI does not have to disclose whether, if at all, they made redactions about Moore or Fick.

## VII. Additional Searches

Plaintiff moves for further searches for attachments and enclosures in her cross-motion. (Plaintiff's Memorandum, p. 32) However, she incorrectly states that certain documents were unaccounted-for in the FBI's *Vaughn indices*. The defendant correctly counters that these documents were in the *Vaughn* indices. As the plaintiff provides no further justification for additional searches, this court denies summary judgment for the plaintiff on this matter.

## VIII. Miscellaneous Matters

### A. Cross–Reference Information

██ The parties dispute whether cross-reference documents must be released. The FBI did not process these documents because they do not concern the subject matter of Billington's FOIA request. Billington contends that the FBI wrongly neglected to process part of a single document.[12] She argues that the several pages of information "appear to continue the description of NSIPS's discussion of its source reports." (Plaintiff's Memorandum; 33). Even if they do not contain information about NSIPS, she argues that they probably contain information which "tends to corroborate or refute the NSIPS report..." (Plaintiff's Memorandum, 33). Defendants argue that the FBI should not have to disclose documents or create a *Vaughn* index for documents not responsive to her request. This court agrees.

The FBI released thousands of pages in response to this FOIA, request. They can not be required to release documents which are non-responsive. If this court were to compel an agency to do so, they would be forced to engage in endless searches, "following an interminable trail of cross-referenced documents like a chain letter winding its way through the mail." *Steinberg v. U.S. Department of Justice*, 23 F.3d 548, 552 (D.C.Cir. 1994). As an agency discloses information, it must constantly make determinations as to which documents are responsive. Without corroborative proof, this court is not persuaded by plaintiff's assertion that a document "likely" contains additional responsive information. *Id.* ("Mere reference to other files does not establish the existence of documents that are relevant to appellant's FOIA request.")

### B. Wrong Document in the *Vaughn* Index

Billington challenges an allegedly missing file "BA cross-reference # 3 (classified file # )," which the FBI originally listed as part of an April, 1995 "Executive Intelligence Review" release. According to Billington, the defendant originally listed four documents in the "Baltimore Cross–References" section of the release, including a deleted page sheet regarding the challenged document. Defendant contends, in the Olivarri Declaration of December 1997, that the section in fact consists of three documents, that the deleted page sheet actually referred to the same document as the fourth document, and that this document was released to the plaintiff by letter dated April 27, 1995. Plaintiff retorts that Olivarri did not explain how the document was "both (a) missing and on locate, and (b) included in the release." (Plaintiff's Reply, p. 20).

██ Where the defendant undertakes a good faith effort to locate a missing document and reasonably specifies its search, this court will not ask the defendant to rehash every single step. To prove the adequacy of its search, an agency may rely upon affidavits provided that they are relative, detailed, non-conclusory, and submitted in good faith. *Pollack v. U.S. Bureau of Prisons*, 879 F.2d 406, 409 (8th Cir 1989); *Weisberg*, 705 F.2d at 1351; *Perry v. Block*, 684 F.2d

---

12. The document at issue is NSIPS # 1. Plaintiff's FOIA request included information about NSIPS.

121, 127 (D.C.Cir.1982) ("[A]ffidavits that explain in reasonable detail the scope and method of the search conducted by the agency will suffice to demonstrate compliance with the obligations imposed by the FOIA.").

This court finds no reason to doubt Olivarri's explanation that a review of the records revealed that the section contained only three documents and that the FBI released the appropriate missing document. *United States Dep't of State v. Ray,* 502 U.S. 164, 179, 112 S.Ct. 541, 116 L.Ed.2d 526 (1991) ("We generally accord Government records and official conduct a presumption of legitimacy.") Accordingly, the defendant need not provide further explanation.

## IX. Information Referred to Other Agencies

In her cross-motion, Billington asks for summary judgment regarding a number of documents referred to various agencies and not yet released. Regarding many of these documents, defendant agreed to expedite reprocessing "to the extent that some of these documents may have fallen through the cracks," and ensure that properly challenged documents will be addressed. (Defendant's Reply, 25). The FBI stated that it will take efforts to ensure that the following agencies release documents and/or provide appropriate *Vaughn* indices by May 15, 1998: Department of Army, Defense Intelligence Agency (including documents referred to the Office of the Assistant Secretary of Defense for Public Affairs, and to the Air Force Office of Special Investigations), Central Intelligence Agency, Department of the Air Force, and the Internal Revenue Service. In order to ensure that the referral agencies are complying in a timely basis, this court orders defendants to submit an affidavit reporting on the status of the defendant's self-imposed May deadline regarding those referred documents. Furthermore, defendant stated that withheld documents which the plaintiff initially challenged from the Department of Justice Civil Rights Division, the Department of Energy, and the Department of Defense have since been released. Plaintiff did not comment further on these documents in her reply. Concerns regarding production of those documents appear to be resolved in this litigation.

The following is a discussion of the plaintiff's challenges regarding documents which were disclosed by the referral agencies.

### A. Defense Intelligence Agency

 Billington challenges the Defense Intelligence Agency's Exemption 2 withholdings of "internal message handling indicators" and "external routing locations and instructions" in serials 163–56797–X and –2. She argues that the defendant fails to describe how these are internal to the DIA. She also provides a copy of serial X from another file previously released to another requester, stating that among the redactions are the date, sender, and addressees, and the phrases "Defense Attache Guatemala" and "to GT official." Accordingly, she asks for the redactions in both the aforementioned documents to be disclosed. Defendant counters that the relevant routing information "relates solely to internal procedures [and] is of no public interest," thereby meeting the standard of the "low–2" exemption.

 As previously discussed, Exemption 2 exempts from mandatory disclosure records "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). If the material may be categorized as such, then the exemption is automatic so long as it relates to trivial administrative matters of no genuine public interest. *Founding Church of Scientology v. Smith,* 721 F.2d 828 (D.C.Cir.1983). Courts have interpreted the exemption to encompass two distinct categories of information: 1) "low 2" information considered to be internal matters of a relatively trivial nature—sometimes referred to as "low 2" information; and 2) "high 2" information, which are more substantial internal matters, the disclosure of which would risk circumvention of a legal requirement. *See e.g., Schiller v. NLRB,* 964 F.2d 1205, 1207 (D.C.Cir.1992).

 The court agrees that the DIA reasonably redacted the information as internal to the agency. Plaintiff provided no compelling reason why the DIA should have to disclose this information as she did not even

touch upon a public interest in the material. Contrary to the plaintiff's argument, the defendant need not show that disclosure of this information will cause circumvention of agency regulations since these redactions fall within the low–2 and not the high–2 range. That the DIA may have redacted the document slightly differently pursuant to another request does not in and of itself indicate misapplication of Exemption 2.

### B. Department of State

Billington questions the redactions of FBIHQ 100–457751–1350, a document entitled "Notes on Interview" which was referred by the FBI to the Department of State. First, Billington questions the number of pages at issue. According to the FBI's deleted page sheets, both a fourteen page document and an additional enclosure were referred to the State Department. However, the State Department's declaration, by Margaret P. Grafeld, does not account for one page for which there is a deleted page sheet. Although the defendant, in its reply, states that the Grafeld declaration accounts for this page, this court does not find their argument persuasive. The declaration does not refer to an "additional page" as the defendant asserts, rather it refers to the "last page of the document." Presumably, this last page is still part of the fourteen page document Grafeld describes and not a description of the additional page.

 The State Department withheld the document in full under Exemption 6. This exemption provides that the disclosure requirements of the FOIA do not apply to "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). When reviewing an Exemption 6 withholding a court must balance the "individual's right of privacy"

against the public interest in disclosure of "agency action to the light of public scrutiny." *Department of the Air Force v. Rose*, 425 U.S. 352, 372, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976). "When disclosure of information which applies to a particular individual is sought from Government records, courts must determine whether release of the information would constitute a clearly unwarranted invasion of that person's privacy." *U.S. Department of State v. Washington Post Co.*, 456 U.S. 595, 602, 102 S.Ct. 1957, 72 L.Ed.2d 358 (1982).

Congress mandated that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt...." 5 U.S.C. § 552(b). In a case involving interviews of Haitian refugees, the Supreme Court determined that the "public interest has been adequately served by disclosure of the redacted interview summaries ..." *U.S. Department of State v. Ray*, 502 U.S. 164, 178, 112 S.Ct. 541, 116 L.Ed.2d 526 (1991).

The Grafeld declaration does not provide sufficient justification to persuade the court that the document was properly withheld in full.[13] This court cannot conduct the appropriate balancing test based on the State Department's affidavit alone. Therefore, the court orders that the document be provided to the court so that the court may conduct an *in camera* review.

Billington also challenges the withholding of several other lines of text redacted in NCLC # 27, pursuant to Exemption 6. Here, the Grafeld declaration states that the only redactions consist of the names of the interviewer and interviewees. However, the court does not have enough information to determine whether the redaction was appropriate. The court orders that the defendant

---

**13.** The declaration states: "The Court also defined the public interest as serving the core purpose of the FOIA, i.e., to 'shed light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.' The information withheld in this case does neither. Accordingly, the public interest is nil and the privacy interest must prevail." (Grafeld Declaration, ¶ 6). In addition, the declaration states: "In this case, the information withheld pertains to three people—an interviewer and two individuals interviewed—and consists of information about them, what they said in the interview, and in the case of the interviewer, what he wrote in his write-up of the interview. Clearly, this information constitutes a protectable privacy interest." (Grafeld Declaration, ¶ 5). Neither explanation is sufficiently specific to justify approving the redaction without more.

submits the document for *in camera* inspection.

### C. CIA

#### 1. Allegations of Bad Faith

Billington charges the CIA with bad faith because a document was "falsely described in the CIA's *Vaughn* index." (Plaintiff's Memorandum, p. 38). The defendant admits that the CIA "mistakenly" stated that a document was exempt when the document was actually disclosed by the FBI. (Defendant's Reply, p. 29). In response, Billington accuses the CIA of lying. While the CIA may have made a mistake in this case, one error does not constitute bad faith. Furthermore, the issue is moot since the document was in fact disclosed by the FBI. This court will not order *in camera* review of CIA documents based on a single mistake.

#### 2. Allegedly Released information

Plaintiff originally asserted that she has not received eight CIA documents and moved for Rule 56(f) discovery to identify these documents. The defendant replied by listing where all these documents had been provided to the plaintiff. In response, although she agreed that all of the cited documents include the disclosed references to the CIA, plaintiff still asks that the FBI and CIA disclose this "new information apparently resolving the matter" in new submissions for the record. This court will not order such submissions. Where the plaintiff agrees that documents at issue have been disclosed, this court will not create additional work for the defendant without good reason.

Next, plaintiff refers to another list of four documents which the CIA has made efforts to release. One document, HQ 10–457751–951, as of the date of Billington's reply, had yet to be released, and Billington states is "still in review." This court orders that the defendant provide an affidavit disclosing the status of this document.

The final list of documents which plaintiff questions involves six serials. First, she states that five out of the six serials have no evident CIA information disclosed. Second, she states that she cannot locate the sixth

document "April 25, 1987 cable." Plaintiff requests that, after the CIA has reviewed HQ 100–457751–051, this court grant her motion for Rule 56(f) discovery.

Discovery is generally limited to the scope of an agency's search. *Weisberg v. Department of Justice*, 627 F.2d 365, 371 (D.C.Cir.1980). Discovery may be appropriate when a plaintiff raises sufficient questions as to the agency's good faith in processing or in its search. *Armstrong v. Bush*, 139 F.R.D. 547, 553 (D.D.C.1991). Discovery should be denied altogether if the court is satisfied from the agency's affidavits that no factual dispute remain. *Goland v. CIA*, 607 F.2d 339, 352 (D.C.Cir.1978), and when the affidavits are 'relatively detailed' and submitted in good faith. *SafeCard*, 926 F.2d at 1200–02.

The first five documents in the series of six were appropriately addressed in the CIA's *Vaughn* index and were released by the FBI as Exhibits to the FBI's September 1997 declarations. These documents and indices provide the relevant CIA information. While it is not clear what "evident CIA information" the plaintiff implies should be disclosed, this court does not agree that the defendant need disclose more information. As to plaintiff's request regarding the "April 25, 1987 cable," this court orders the defendant to disclose the whereabouts of the document.

There is no question here regarding the agency's good faith in processing or in its search. In accordance with the court's discretion, and so long as the defendant appropriately responds to this court's order, discovery is not necessary to locate one document. *Meeropol v. Meese*, 790 F.2d 942, 960–61 (D.C.Cir.1986)

#### 3. Request for Supplemental *Vaughn* Index

Billington moves for a supplemental *Vaughn* submission from the CIA, stating that the current submission is "excessively vague and general." First, she challenges information withheld as "information from a foreign liaison service." She claims that the CIA makes "only a speculative description of confidentiality of such information." Second,

she states that the CIA withheld "arguably-exempt information." She argues that "most of the cited categories represent apparently-discrete bits of information" and that the CIA does not explain its other withholdings. In sum, she argues that the CIA did not give a sufficient description to make the segregability analysis.

▆ Through their *Vaughn* indices, agencies must provide as detailed a description as possible without disclosing privileged material. An agency must specify in detail which portions of the document are disclosable and which are exempt. *Vaughn v. Rosen*, 484 F.2d 820 at 827 (D.C.Cir.1973). A court will accord an agency's affidavit substantial weight so long as a submitted affidavit contains sufficient detail of "the logical connection between the information [withheld] and the claimed exemption." *Goldberg v. U.S. Department of State*, 818 F.2d 71, 78 (D.C.Cir.1987). The agency's affidavits should not be "controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C.Cir.1981).

Courts have refused to require agencies to file public *Vaughn* indices that are so detailed that they reveal sensitive information the withholding of which is the issue in the litigation. *See e.g., Landano*, 508 U.S. at 180, 113 S.Ct. 2014; *Armstrong v. Executive Office of the President*, 97 F.3d 575, 580–81 (D.C.Cir.1996). In *Voinche v. FBI*, 940 F.Supp. 323, 327 (D.D.C.1996), *aff'd Voinche v. FBI*, Nos. 96–5304, 9519CVO1944, 1997 WL 411685 (D.C.Cir. June 19, 1997), the court found the *Vaughn* index sufficient even though it was "vague" and did "not provide much help to the Court in reviewing de novo the defendant's decision to withholding the documents." The court accepted as true the special agent's assertions and stated that the special agent provided as much information in its *Vaughn* index as it could without compromising national interests. *See also Maynard v. CIA*, 986 F.2d 547, 557 (1st Cir.1993) (stating that *Vaughn* declarations filed in FOIA cases involving classified documents inherently require a degree of generalization).

A *Vaughn* index has been found inadequate where the affidavits offered no functional description of the documents, did not disclose the type of documents, dates, authors, number of pages, or any other identifying information for the records it withheld. *Oglesby*, 79 F.3d at 1184.

▆ In contrast, the CIA, through the *Vaughn* indices of Lee Strickland, provided all of the aforementioned information for the documents on which it made withholdings. This court does not agree with the plaintiff's characterization. The CIA's categorical exemptions were supplemented with detailed justifications. The plaintiff speculates that the CIA did not sufficiently disclose segregable information based on the number of lines redacted pursuant to certain exemptions. However, this is insufficient evidence to compel either disclosure or supplemental affidavits. This court does not agree that "most of the cited categories represent discreet bits of information." As previously discussed, categories such as sources or intelligence methods are not necessarily small pieces of information as the plaintiff suggests.

▆ Regarding the CIA's withholding of information pertaining to foreign liaison relationships, this court is satisfied with the categorical justification provided in the Strickland declaration. As described by the CIA, such information is "critical" for the agency and "reasonably could be expected to cause serious damage to our national security." As the CIA's affidavits are reasonably specific, the court gives the CIA appropriate deference to withhold such information and does not believe the CIA should have to reveal more information that might jeopardize national security interests. Finally, plaintiff does not allege and this court does not find contrary evidence or bad faith by the CIA. *Military*, 656 F.2d at 738.

After carefully reviewing the contested indices, this court is satisfied with the CIA's submission and denies plaintiff's motion for a supplemental *Vaughn* submission.

### D. Unknown Agencies: Other Referrals Not Included in *Vaughn* Index

During the course of this litigation, the parties agreed to bifurcate the challenges

into two stages. In this first stage, the plaintiff was to provide, by December 1996, a list of all challenged documents, except for those contained in four specified Internal Security files. In the second stage, the parties were to address documents from the remaining four files.[14]

The parties dispute whether the defendant should have to address plaintiff's challenges regarding certain referral documents in the Internal Security files. The confusion arose, in part, over whether all referral documents had to be addressed in the first motion for summary judgment, including those which were part of the Internal Security files. As part of her first stage list of challenged documents, Billington included certain Internal Security referral documents. After further review, she submitted a list of other challenges to Internal Security referral documents in her second stage filing on July 10, 1997. The defendant contends that the December 1996 deadline pertained to all referral documents, including those in the Internal Security files. Therefore, defendant argues that it does not have to address the latter referral challenges because plaintiff missed the court-imposed deadline.

This case involves a massive number of documents. Although this court expects parties to strictly follow its orders and deadlines, it is understandable that there may have been some confusion about these referral documents. Notwithstanding this confusion, the fact remains that all documents in the internal security files were to be addressed in the second stage, including the referral documents. That the plaintiff may have filed certain challenges prematurely, some of which were *Vaughned* and addressed in the first stage, neither precludes the plaintiff from challenging those documents in the second stage nor permits the defendant to ignore those challenges altogether. Since the defendant states that it did not *Vaughn* the relevant documents, this court orders that the FBI provide a *Vaughn* index for the following documents within twenty (20) days from the date of this order:

NY 100–165744: serials 1324 and 3468

HQ 100–457751: serials 895, an unserialized document dated 1/2/76 between serials 1077 and 1078, 1262X(8 unaccounted-for pages), 1318, 1321, 1328, and 1545.

In addition, defendant stated that *Vaughn* indices have or will be accounted for by May 15, 1998 for those documents identified in plaintiff's motion, which were included in the December 1996 list. The court expects that the FBI has since submitted those indices. To the extent that it has not, the court orders the FBI to do so.

## X. Conclusion

For the reasons set forth herein, defendant's motion for summary judgment will be granted in part and denied in part. Plaintiff's cross-motion for summary judgment will be granted in part and denied in part, and plaintiff's collateral motions for supplemental *Vaughn* indices, Rule 56(f) discovery, and further searches will be denied.

A separate order shall issue this date.

### ORDER

This matter comes before the court on the parties' cross-motions for partial summary judgment regarding documents the withholdings of which were challenged by plaintiff in December 1996, and plaintiff's collateral motions, and any oppositions and replies thereto, and the entire record therein. For the reasons stated in the accompanying memorandum opinion, it is hereby:

---

**14.** The October 10, 1996 Order stated in part: "that within sixty (60) days from the date of this Order, excepting the documents in the four files identified below, the plaintiff will identify from all documents subject to litigation in this matter, including all 'referral' documents, the documents whose total or partial withholding she challenges under the Freedom of Information Act (FOIA) ... that within six months of that date, or within eight months of the date of this Order, plaintiff identify all documents from the following remaining four files whose total or partial withholding she challenges under the FOIA: FBI Headquarters file 100–457751, FBI New York file 100–165744, FBI Philadelphia file 100–54152, and FBI Baltimore file 100–27785 ... and that all documents not specifically challenged shall no longer be subject to challenge or further litigation in this action ..."

ORDERED that plaintiff's motion for partial summary judgment is GRANTED in part and DENIED in part; it is further

ORDERED that defendant reprocess and disclose appropriate information withheld under Exemption 7(C) about Edwin See; it is further

ORDERED that defendant reprocess the following documents to include withheld information previously disclosed as provided in plaintiff's declarations:

Billington # 35, 36, 42 and 53, and EIR # 9; it is further

ORDERED that defendant submit an affidavit on the status of well as documents enumerated in this order, defendant's motion for partial summary judgment is GRANTED as to all documents responsive to plaintiff's Freedom of Information Act request that were referred by the Federal Bureau of Investigation to other federal agencies for processing; it is further

ORDERED that plaintiff's motion to compel supplemental *Vaughn* submissions is DENIED in part and GRANTED in part; it is further

ORDERED that defendant process and provide a *Vaughn* index for HQ 100–457751 and that defendant disclose the whereabouts of a document described as "April 25, 1987 cable" in reference to documents addressed by the CIA; it is further

ORDERED that plaintiff's motion for leave to take discovery pursuant to Fed. R.Civ.P. 56(f) is DENIED; it is further

ORDERED that defendant submit FBIHQ 100–457751–135 and NCLC # 27 for *in camera* review; it is further

ORDERED that defendant submit an affidavit disclosing the status of all documents which it stated that it would encourage referral agencies to process; it is further

ORDERED that defendant submit a *Vaughn* index within twenty (20) days from the date of this order for the following documents:

NY 100–165744: serials 1324 and 3468

HQ 100–457751: serials 895, an unserialized document dated 1/2/76 between serials 1077 and 1078, 1262X(8 unaccounted-for pages), 1318, 1321, 1328, and 1545;

and it is further

the following documents which defendant agreed to reprocess by May 15, 1998:

Campaigner # 15, 17–19, 23, 25 & 26; it is further

ORDERED that defendant submit an additional affidavit describing, with specificity, the following documents and submit the reasons for its withholdings in these documents:

· PH 196B–1893–143, HQ 163–47822–5, HQ 163–47822–NR (EIR # 17), HQ 163–47822–18 (EIR # 18), HQ 163–47822–30, HQ 163–56797–1, HQ 163–56797–1 NR (EIR # 29), and HQ 163–56797–6;

it is further

ORDERED that plaintiff's motion for further searches is DENIED; it is further

ORDERED that, with the exception of the documents for which defendant has agreed to provide additional submissions as well as documents enumerated in this order, defendant's motion for partial summary judgment is GRANTED as to all other documents responsive to plaintiff's Freedom of Information Act request that were not in the following four Federal Bureau of Investigation files (unless identified in plaintiff's December 1996 Notice of Filing): Headquarters file 100–457751, New York file 100–165744, Philadelphia file 100–54152, Baltimore file 100–27785; it is further

ORDERED that, with the exception of the documents for which defendant has agreed to provide additional submissions and encourage referral agencies to provide additional submissions, and referral documents in the four Internal Security files, as

ORDERED that plaintiff's motion for Rule 56(f) discovery is DENIED; and it is further

ORDERED that counsel meet and confer and submit to the court, within 10 days of this date, a proposed scheduling order(s) to govern further proceedings herein.